Mulcairns, Adm'x, etc. vs. The City of Janesville.

MULCAIRNS, Administratrix, etc., Respondent, vs. THE CITY OF JANESVILLE, Appellant.

*September 28 — October 12, 1886.*

MUNICIPAL CORPORATIONS: MASTER AND SERVANT: NEGLIGENCE: DAMAGES. *(1). Negligence of agents: Public officers. (2) Presumption of negligence from accident. (3) Fellow-servants. (4) Instructions to jury. (5, 9) Evidence as to how wall should be built. (7) Presumption as to person at fault. (8) Risks assumed by laborer. (10–12) Damages for death of husband: Children dependent on widow: Probable duration of life: Excessive damages.*
APPEAL TO S. C. *(6) What exceptions considered.*

A city is liable for the negligence of its agents in the performance of a public duty if they are specially employed by the city for the particular work and are not acting as public officers.

Mulcairns, Adm'x, etc. vs. The City of Janesville.

2. The fact that the wall of a cistern which was being constructed by a city fell by its own weight, or by the pressure of gravel and earth behind it, placed there by the city, raises a presumption of negligence.

3. A person employed by the city to superintend the construction of a cistern, and who in turn employed the workmen to construct the same, is not a fellow-servant of such workmen.

4. The evidence being overwhelming that a cistern wall which fell and killed the plaintiff's intestate was negligently built, an instruction that the city was bound to use such reasonable degree of care and skill in constructing the wall as would be sufficient in works of a similar character to have them suitable and safe for the purpose intended, is *held* not to have prejudiced the defendant.

5. The question being whether a particular cistern wall was properly built, evidence as to whether it was customary to put braces on the inside of cistern walls generally, was properly excluded.

6. An exception to language used by counsel in the argument to the jury, which was not ruled upon by the trial court, cannot be considered on appeal.

7. The presumption is that the falling of a piece of masonry was the fault of the superintendent who directed how the work should be done, and not of the masons.

8. An unskilled laborer engaged in shoveling earth at the bottom of a cistern will not be presumed to have assumed the risk that the cistern wall might fall upon him, or to have had knowledge of the liability of the wall to fall on account of its negligent construction.

9. Where plaintiff's intestate was killed by the falling of a wall, evidence as to the method in which the wall was afterwards rebuilt may be material as showing how such a wall should be constructed.

10. In an action for damages on account of the death of her husband, evidence as to the number of children dependent on the widow for support is admissible.

11. In such an action the admission in evidence of annuity tables to show the probable duration of the life of the deceased, is *held* not to have prejudiced the defendant.

12. A verdict for $2,000 damages on account of the death of a married man, an unskilled laborer, fifty-five years old, *held* not excessive.

APPEAL from the Circuit Court for *Rock* County.

Action to recover damages on account of the death of Thomas Mulcairns, the plaintiff's intestate, who was killed on the 16th of August, 1884, by the falling of the walls of a

cistern in which he was working and which was being con-
structed by the defendant city for the use of its fire depart-
ment. The deceased was a common laborer, and at the
time of his death was fifty-five years of age. He left a
widow (the plaintiff herein) and seven minor children.

The substance of the pleadings and the evidence given on
the trial will sufficiently appear from the opinion.

In the course of his argument to the jury, the plaintiff's
counsel used the following language: "It is only necessary
to carry the mind to an instance in this state where the fall-
ing of a building brought calamity and grief upon a whole
city and came near blotting out the highest judicial tribunal
that ever sat within this state. . . Life was worth just as
much to Mulcairns as it was to any one; he did not want to
die any more than you do." The defendant's counsel asked
that such remarks be taken down, together with his excep-
tions to them. No ruling was made by the trial court in
relation thereto.

At the request of the plaintiff the court gave the follow-
ing instructions to the jury:

"1. In the absence of any explanation of the falling of
the wall in question, you have the right to infer and find
from the evidence that it fell because of its defective con-
struction.

"2. Where the thing is shown to be under the manage-
ment of the defendant, and the accident is such as in the
ordinary course of things would not happen if those who
have the management use proper care, it affords reasonable
evidence, in the absence of explanation by the defendant,
that the accident arose from want of care."

The following instructions asked by the defendant were
refused:

"1. If the city furnished good and suitable material and
competent workmen, and they constructed such a wall as
experience had shown to be sufficient and safe, and were not

guilty of negligence, either in the workmanship, material or kind of wall constructed, then the plaintiff cannot recover, even though the wall fell, and the injury was caused in consequence.

" 2. If the wall in question was such a wall as prudent, competent, and experienced workmen would build, and such a wall as prudent, competent, and experienced workmen would regard as a safe and suitable wall, then the plaintiff cannot recover.

" 3. If the defendant is liable at all, it is liable for the reason that it was negligent in constructing and caring for said wall, and the defendant is only held to the use of ordinary and reasonable care in constructing the wall and cistern; and if in fact, considering the kind and nature of the work to be done, it exercised ordinary and reasonable care, it is not liable in this action, even though the wall fell, and in falling injured or killed Thomas Mulcairns.

" 5. The deceased was bound to exercise ordinary care to ascertain the danger, if there was any, and if he negligently worked in a place of danger when by the use of ordinary care he could have ascertained the danger, and he lost his life in consequence of such negligence, the plaintiff cannot recover.

" 6. If the defendant furnished good and suitable material and competent and careful servants, and was guilty of no negligence in employing and retaining the servants employed, and there was a defect in the wall on account of the negligence of one of the fellow-servants of the said Thomas Mulcairns, and said negligence was unknown to the defendant or its superintendent, and such defect was of such a character that in the use of reasonable and ordinary care the defendant or its superintendent would not have known it, then the plaintiff cannot recover."

The court charged the jury, among other things, as follows:

" Was the wall which fell upon the said Thomas Mul-

cairns so negligently, defectively and dangerously built, that it fell upon and killed Thomas Mulcairns while he was in the exercise of ordinary care? If so, and you so believe and find from the evidence, then the defendant is liable on this action and the plaintiff is entitled to recover. And passing from the question as to whether the defendant city was or was not guilty of any neglect or default in the construction of the wall in question, I instruct you that the city was bound to use and exercise such reasonable degree of care and skill in constructing the wall in question as would be sufficient in works of a similar character and kind, to have them suitable and safe for the purpose intended.

"If the city furnished good, suitable material, and competent and skilled workmen, to properly construct the walls of the cistern in question, and such competent and skilled workmen were not wanting in any care or skill in its erection and construction, and were guilty of no neglect, default, or wrongful act in its construction, then the defendant is not liable to damages in this action. . . . But it is not enough to relieve the city in this action that it employed competent and skilful workmen to build the wall in question, but the city was under obligation to see to it that all reasonable, competent, and proper skill was in fact used in its construction, and that the superintendent and workmen were not wanting in reasonable and proper skill and care in its erection. . . .

"It is incumbent upon the plaintiff to show, by a preponderance of the evidence, that the death of Thomas Mulcairns was caused by the wrongful act, neglect, or default of the defendant city. . . . But when the plaintiff showed by competent evidence that the wall in question fell upon and caused the death of Thomas Mulcairns while he was in the exercise of ordinary care, the evidence raises a presumption of negligence or want of proper care and dili-

gence on the part of the city in the construction of the wall, and in such case the burden of proof is changed, and the city is under obligation to show that the city was guilty of no negligence or want of care in the construction of the wall; or, in other words, that such wall was in all respects properly and safely built. . . .

"You have heard the evidence in relation to the age, health, and ability to labor of Thomas Mulcairns, and what portion of time he was ordinarily employed and what wages he earned. The evidence tends to show that the said Thomas Mulcairns was about fifty-five years of age at the time of his death. By the annuity tables adopted by the supreme court for the use and government of the circuit court, at the age of fifty-five the presumption is that a person in good health will live for the period of eight and sixty-seven one-hundredths years; at fifty-six, eight and one half years."

The court also charged the jury that the damages, if any should be awarded, would belong to the widow and not to the children; and then, upon the suggestion of plaintiff's counsel, stated that this did not exclude from the consideration of the jury the fact that the children were dependent upon the widow.

There was a verdict for the plaintiff, assessing her damages at $2,000; a motion for a new trial was denied; and from the judgment entered on the verdict the defendant appealed.

*Charles E. Pierce* and *William Smith*, for the appellant, contended, *inter alia*, that when a city performs a public duty through its officers or agents, in which acts the city as a corporation has no particular interest and gains no particular advantage, and while in the performance of such duty an injury is occasioned by the act or omission of the officers or agents of the corporation, there is no liability on the part of the city. *Hayes v. Oshkosh*, 33 Wis. 314; *Haf-*

*ford v. New Bedford*, 16 Gray, 297; *Fisher v. Boston*, 104 Mass. 87; *Hill v. Boston*, 122 id. 344. The rule here attempted to be applied, in regard to inference and the change of the burden of proof, has no application to cases where the contest is between employer and employee or the representatives of the employee. *Beaulieu v. Portland Co.* 48 Me. 291; *Cassidy v. M. C. R. Co.* 76 id. 488; *Conley v. Portland*, 3 Atl. Rep. 658; 2 Thomp. on Neg. 1053, and cases cited.

*Edward M. Hyzer* and *Edwin F. Carpenter*, for the respondent, to the point that the city was liable for negligence in the construction of the cistern, cited *Hamilton Co. v. Mighels*, 7 Ohio St. 110; *Barnes v. Dist. of Columbia*, 91 U. S. 540; *Rhodes v. Cleveland,* 10 Ohio, 159; *McCombs v. Akron*, 15 id. 474; *Cincinnati v. Cameron*, 33 Ohio St. 366; *Tiffin v. McCormack*, 34 id. 638; *Logansport v. Wright*, 25 Ind. 512; *Greencastle v. Martin*, 74 id. 449; *New York v. Furze*, 3 Hill, 612; *New York v. Bailey*, 2 Denio, 433; *Rochester W. L. Co. v. Rochester*, 3 N. Y. 468; *Lloyd v. New York*, 5 id. 369; *Conrad v. Ithaca*, 16 id. 158; *Gilmartin v. New York*, 55 Barb. 239; *Stone v. Augusta*, 46 Me. 127; 2 Dillon on Mun. Corp. sec. 772; *Merrifield v. Worcester*, 110 Mass. 216; *Thayer v. Boston*, 19 Pick. 511; *Spelman v. Portage*, 41 Wis. 144.

ORTON, J.   The complaint substantially charges that the city, being authorized so to do, about the 9th day of August, 1884, entered upon the construction of a cistern, for the use of the fire department of said city, for protection against fire; that the city was authorized to and did employ men in the construction of the same, and that about the 16th day of said month said city had made an excavation for said cistern and erected within the same a wall of stone masonry, along the sides of the same, resting upon the bottom of said excavation, about 40 feet long, 10 feet high, 20

inches in thickness, and about 12 feet wide; that it was so constructed by the city, in such a careless and negligent manner, and negligently allowed to so remain, to the knowledge of the city, that on the day last aforesaid a portion of it fell upon Thomas Mulcairns, the husband of said plaintiff, who was employed by said city at that time in shoveling earth in the bottom of said cistern, in accordance with such employment, near said portion of the wall, having no knowledge of its unsafe condition and using due care and caution, and caused his death. He left the plaintiff as his widow, and seven minor children dependent upon her for support.

The answer admits the appointment of the plaintiff as administratrix, the incorporation of the city, that it was so engaged in the construction of a cistern, and that part of the wall thereof fell inward, and that Thomas Mulcairns was injured thereby, and died in consequence thereof; but denies all other allegations, and alleges that the cistern was being built by the city with all the care and caution possible to be used; and that the city employed workmen known to be skilful and careful, and used good material; *and employed one James Shearer to superintend and manage the construction of the cistern,* and that he was suitable to do so; and that said cistern was constructed in a skilful manner, without any negligence on the part of the city; and that the falling of said wall was caused or contributed to by the want of ordinary care of the deceased; and that the deceased entered upon his work with full knowledge of the dangerous condition of said wall.

The complaint most clearly states a cause of action against the city, and the first exception, which was to overruling a demurrer *ore tenus* to the complaint, was not error. The answer admits that the wall was built *by the city,* through the agency and under the superintendence of James Shearer, employed for that purpose by the city,

and that when it was built it fell upon and killed the deceased.

1. The point made by the learned counsel of the appellant, that the city is not liable because it was in the performance of a public duty in which the city, as a municipal corporation, had no pecuniary interest, and the injury was occasioned by the act or omission of its officers or agents, may as well be disposed of here, because it arises as well upon the pleadings. James Shearer was not one of the public agents or officers of the city, but specially employed to superintend this particular work for the city. Such is the effect of the answer.

The case cited, and the first one on the question in this state, of *Hayes v. Oshkosh*, 33 Wis. 314, goes upon the doctrine generally recognized that when the agents acting for the city are not in the employment of the city, but act rather as public officers, such as the fire department provided for by law, and the city does nothing more than appoint its officers, such persons perform duties fixed by law and not special services contracted to be performed under employment of the city. The distinction between the two cases is very wide and quite apparent. If the city could not be held liable in such a case, it never could in any; for it is a common case of special employment for the performance of special services for and on behalf of the city. It was the legal duty of the city to construct cisterns for fire purposes, and it was engaged in the attempted performance of this duty through its own private agencies, and not through the fire department or its officers, or other officers of the city whose duty it was to perform such work.

The case of *Spelman v. Portage*, 41 Wis. 144, which is clearly in point, most clearly points out these distinctions. The distinction is made perhaps more clearly in the cases of *Harper v. Milwaukee*, 30 Wis. 365, and *Little v. Madison*, 49 Wis. 605. Both the principle and the distinction of

cases are fully considered and clearly established in our own cases, so that we need not concern ourselves very much about cases in other states, for the above cases were decided upon a full examination of authorities elsewhere.

2. The point that the falling of this wall by its own weight, or by the pressure of gravel and earth behind it, placed there by the city, is *prima facie* evidence of the negligence of the city, is also as well raised upon complaint and answer. The unexplained falling of the wall is admitted in the answer. Such a presumption rests upon the clearest reason. Why did it fall? If it had been properly constructed, it is common observation and within the common course of things that it would not have fallen; therefore it was not properly constructed; and it was negligently constructed, because, by the exercise of ordinary care and prudence, such a wall would have been so constructed that it would not have fallen, but would have stood alone. The city, in such a case, may well be called upon to explain the reason why; for the knowledge of the manner of the construction of its work is peculiarly in the city and its agent, for they constructed the wall. The city must, by proof, repel and overcome this natural presumption.

The case of *Kirst v. M., L. S. & W. R. Co.* 46 Wis. 489, fully illustrates this rule of evidence, and the presumption is rested upon the fact that "the loss resulted from an act from which, when due care is taken in its performance, loss does not ordinarily ensue." In this case the following language from the opinion in *Scott v. London Dock Co.* 3 Hurl. & C. 596, is quoted approvingly: "But when the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident

arose from want of care." In that case the plaintiff was injured by bags of sugar falling from a crane in which they were lowered to the ground from the warehouse of the defendant, in principle like this case. The instruction of the court, and the rulings to that effect, were clearly correct, both by reason and authority.

3. Another point can as well be disposed of on the pleadings. The answer admits the employment of James Shearer as the superintendent of this work. He employed workmen, it seems by the evidence, to put up this wall, and the deceased to excavate as he was at work when killed. If the city could ever be present through any human agency, it was present doing this work in the person of its own superintendent. He was not a workman with the deceased and others in any sense. The city used his eyes to observe, and his judgment to decide, and his care or negligence in superintending the work. There cannot be a case presented in which such a person is vice-principal and the city present *pro hac vice*, and such person very far from being a co-employee with the deceased as a shoveler and the other workmen as masons, if this is not. The city must act through human agencies, and it can never be made liable for the negligence of any agent if not for the negligence of Shearer, its superintendent in this case. The question is too plain for argument or for the loading of this opinion with authorities. The question is not in the case; nor is the question whether the city employed skilful workmen or a competent superintendent. On the pleadings and evidence, the case is one of actual negligence, and is not one in which such a question can possibly arise.

4. Exception is taken to that part of the charge that required the city to make a wall "suitable and safe for the purpose intended." The evidence is overwhelming that the wall was not well built, but negligently and carelessly built. Its foundation was not wide enough,— a portion of

it had fallen before. It should have been stayed by proper supports until it was arched. It was hardly a question for an expert whether such a wall was properly constructed, when it could not stand alone. The instruction complained of could have done the city no harm in such a case.

5. The exception to the overruling of the objection to the question whether it was customary to put braces on the inside (of cistern walls) was not well taken, because not specially applicable to a cistern wall of this kind or dimensions. But the next question, whether a wall of this particular kind required braces, was allowed to be answered, and the witness answered: " I don't think they do." This was all on that subject that was material.

6. The exception to the argument of counsel does not bring the matter within the jurisdiction of this court. This court can take cognizance only of alleged errors of the court below. The conduct of the trial must be left with that court, and, if that court commits an error in its rulings, it may be corrected here. But the circuit court did not rule on the propriety or impropriety of this part of the counsel's address to the jury, and therefore there is no exception which we can notice.

7. The refusal of the court to submit to the jury whether the falling of the wall was not the fault of those who worked upon it as masons was clearly correct; for, according to the answer and the evidence, James Shearer was the one to oversee the work and direct just how it should be done. Unless it could be shown that the masons neglected to follow the directions of the superintendent, they must be presumed to have complied with his directions, and that he was responsible for the manner in which the work was done.

8. Did the deceased assume the risks of his employment on this work? He might have assumed the risk of an embankment of earth falling on him in a pit in which he was

digging, for that was the work in which he was engaged near this dangerous wall when he was killed by it; but that he assumed any of the risks of the building of the wall is not shown. He had nothing to do with the plans or mechanism of the wall. He may have been engaged at some times in waiting upon the masons as a carrier of mortar or of stone, but such a low and subordinate employment would not make him responsible for the higher and skilled work of its masonry. But when he was killed he was shoveling earth inside the walls, and he had nothing to do with the walls themselves.

9. It is assumed that he must be presumed to have had knowledge of the liability of the wall to fall. He was an ignorant and unskilled common laborer, and it cannot be presumed, from the fact that he was working near it, that he might have expected its fall, and it was not proved that he knew the real condition of the wall before it fell, and there was no proof that the deceased undermined the wall by his digging.

10. The witness Hyzer was asked how they finally repaired and built that wall afterwards. This was not objected to, and he testified how it was rebuilt, and that they put buttresses against the wall, extending down to the bottom. Then the witness was asked, "How many of them?" and he answered, "Two." This was then objected to as being immaterial. The witness went on to explain how the walls were supported. The court remarked, in overruling the objection, that it might be material if it fell without buttresses and stood with them. The court was unquestionably correct, for the evidence had a tendency to show how such a wall should be constructed. But we think the evidence was quite immaterial in this case, as it was obvious to the most unskilled mechanic, and to any intelligent observer, that those walls should have had support in some way to prevent them falling. But the question was

again asked, and answered without objection, whether the wall was rebuilt with braces, props, or abutments or buttresses, and the witness answered that it was.

11. It is claimed as error that the court allowed proof of the number of children dependent upon the mother for support. This evidence was proper to show her loss. In life, the father was bound to support the children. After his death, to the extent of her pecuniary ability the mother succeeded to this natural obligation. These were the conditions and circumstances of the widow, as the plaintiff, proper to be given in evidence, by the sanction of *Ewen v. C. & N. W. R. Co.* 38 Wis. 613.

12. It is claimed as error that the court admitted the annuity tables, showing the ·probable duration of the life of the deceased had it not been then and thus terminated. Whether the annuity tables are proper to be used in a case like this to show the probable damage we need not say, for they were certainly prejudicial to the plaintiff, if the jury regarded them. These tables were made for the purpose of life insurance and annuities where the very shortest time is fixed as affecting pecuniary risks. They will, no doubt, fall short, in most instances, of the actual duration of human life.

13. The verdict was not excessive, but very reasonable. It must be considered that the evidence was very strong and conclusive of the negligence of the defendant city, and of due care of the deceased. The verdict was evidently just, and warranted by the evidence. The court charged the jury very fully and fairly.

There may be some other alleged errors which have been overlooked or disregarded, but they, as well as many which have been noticed, ought certainly to be disregarded as errors or defects not affecting the substantial rights of the defendant. " No judgment shall be reversed or affected by reason of such error or defect." Sec. 2829, R. S.; *Pirie v.*

*Hughes*, 43 Wis. 534. The zeal and ability of the learned counsel of the appellant were worthy of success, but we do not hesitate to believe that, on the whole case, the judgment is lawful and just.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 29 N. W. Rep. 569.— REP.

