SCHMIDT, Executrix, Respondent, vs. J. G. JOHNSON COM-
PANY, Appellant.

*January 12—January 31, 1911.*

*Master and servant: Unsafe place: Giving way of wall: Presumption*
*of improper construction: Injury to servant while making place*
*safe: Assumption of risk: Contributory negligence: Warning of*
*danger: Accident: Questions for jury.*

1. The fact that the plank wall of a coal shed which had been built
   by defendant about a month before suddenly gave way and the
   top of the wall moved several feet and injured a servant who
   was engaged in bracing it, was sufficient, in the absence of any
   explanation, to warrant a finding by the jury that the wall was
   not properly constructed, to the knowledge of the defendant.
2. The mere fact that the servant, by direction of the defendant, was
   engaged in bracing the wall of the shed, which at the time was
   only half filled with coal, would not justify the court in holding
   as a matter of law that he was knowingly making a dangerous
   place safe and hence that he assumed the risk and that the rule
   requiring the master to furnish a reasonably safe working place
   did not apply. Many reasons beside the avoidance of present
   danger might exist for bracing the wall; and in the absence of
   anything appearing to the contrary the servant had the right to
   believe it safe.
3. Such a case does not fall within the principle that where work is
   of such a nature that its progress is constantly changing the
   conditions as regards increase or diminution of safety, the safe
   place rule does not apply.
4. Where the servant in such case was not chargeable with notice
   of the dangerous condition of the wall, the fact that, in chopping
   off a knot from one of the bin posts for the purpose of fitting the
   brace thereto, he had placed himself on a ladder in the space
   between the wall and an independent post standing near,—that
   being the most convenient place for doing the work,—does not
   show that he was guilty of contributory negligence, although
   when the wall gave way he was crushed between it and said in-
   dependent post.
5. The questions whether the servant had been warned of the danger
   before the wall gave way, and whether his injury was the result
   of an unaccountable accident or of the defective construction of
   the wall, are *held* upon the evidence to have been for the jury.

Appeal from a judgment of the circuit court for Manitowoc county: Michael Kirwan, Circuit Judge. *Affirmed.*

This action was brought by plaintiff as executrix to recover for personal injuries sustained by her late husband which resulted in his death. The principal issues involved on the trial were whether defendant furnished a reasonably safe working place, assumption of risk, contributory negligence, and amount of damages. The defendant objected to any evidence under the complaint, which objection was overruled. Motions were made by defendant for nonsuit and directed verdict, which were denied. The jury returned the following verdict:

"(1) Was the death of plaintiff's testator, John Schmidt, deceased, caused by his being pressed on June 11, 1908, between the west wall of the coal bin or shed and the post to the west thereof described in the complaint, when that wall moved or gave way to some extent, while he, as an employee of said defendant company, was doing the work which he was directed by the foreman to do? *A.* Yes.

"(2) At the time when said testator was injured, was the west wall of said shed or bin so weak and insufficient, for the purpose of holding the coal then stored therein, as to make the place in which plaintiff's testator was at work when he was injured not reasonably safe for performing there the work he was then doing? *A.* Yes.

"(3) If you answer the second question 'Yes,' answer this: Before said testator was injured, did the proper representative of defendant know that said place in which plaintiff's testator was at work when he was injured was not reasonably safe for the performance there of the work which he was then doing? *A.* Yes.

"(4) If you answer the second question 'Yes' and the third question 'No,' answer this: Would the exercise of ordinary care by defendant's said representative have made him aware of the fact, before said testator was injured and in time to have prevented the injury, that said place specified in the third question was not reasonably safe for the performance there of the aforesaid work? *A.* Yes.

"(5) If you answer the second question 'Yes,' and if you also answer 'Yes' to either the third or fourth question, an-

swer this: Was the testator's injury the natural and probable consequence of the defendant's negligence in not having provided a reasonably safe place for the testator in which to do the aforesaid work?  *A.* Yes.

"(6) If you answer the fifth question 'Yes,' answer this: In the exercise of ordinary care, should defendant's said representative, as a man of ordinary intelligence and in the light of the attendant circumstances, reasonably have foreseen before said testator was injured, and in time to have prevented the injury, that the existing condition of the west wall of said shed or bin would be likely to cause personal injury to any of defendant's employees while engaged in doing the work which said testator was doing at the time of his injury?  *A.* Yes.

"(7) If you answer the second question 'Yes,' answer this: Before he was injured, did said testator know that the place specified in the third question was not reasonably safe for the performance there of the aforesaid work?  *A.* No.

"(8) If you answer the seventh question 'No,' answer this: Would the exercise of ordinary care by said testator have made him aware of the fact, before he was injured and in time to have prevented the injury, that said place specified in the third question was not reasonably safe for the performance there of the aforesaid work?  *A.* No.

"(8½) Before his injury and while he was standing on the ladder, was said testator advised by Fred Krase to get off from the ladder because the west wall of the coal shed or bin was cracking?  *A.* No.

"(8¾) If you answer 'Yes' to the question last above, answer this: In reply to the advice given by Fred Krase did the said testator say: 'It won't come so soon?'  *A.* No.

"(9) Did any want of ordinary care on the part of said testator contribute to cause his injury?  *A.* No.

"(10) What sum will reasonably compensate the estate of said testator for the pain and suffering which he experienced from his aforesaid injuries before his death, and for the expense of medical aid and attendance in the treatment of those injuries?  *A.* $1,025.

"(11) What sum will fairly and justly compensate *Mary Schmidt,* the widow of said testator, for the pecuniary injury resulting to her from his death?  *A.* $2,000."

Schmidt v. J. G. Johnson Co. 145 Wis. 49.

The usual motions were made by defendant after verdict and denied, and judgment rendered in favor of the plaintiff, from which this appeal was taken.

For the appellant there was a brief by *Nash & Nash,* and oral argument by *A. L. Nash.*

For the respondent there was a brief signed by *O'Connor, Schmitz & Wild, Schmitz & Groelle,* and oral argument by *A. J. Schmitz.*

Kerwin, J. The questions raised by the various assignments of error may be classified under three heads: (1) Was there a failure to furnish a reasonably safe working place? (2) Did the decedent assume the risk and was he warned of the danger? (3) Was he otherwise guilty of contributory negligence?

A preliminary question is raised by appellant on an objection to evidence under the complaint on the ground that it failed to state a cause of action. The court below overruled the objection and we think no prejudicial error was committed in that regard.

1. Error is assigned because of refusal to grant a nonsuit. It is argued that plaintiff produced no proof to show any negligence in constructing or maintaining the wall which gave way and caused the injury, or any proof of actual defect in the wall. The evidence at the close of plaintiff's case showed that deceased was sixty-two years old when injured, was a brickmaker by trade, but had only worked at it four or five months in the year, and did not show the extent of his experience working around coal sheds or other similar structures. On the morning in question defendant's foreman ordered deceased and one Krieger to put braces on the west side of a hard-coal shed. This shed stood between the river and Quay street, the river being north of it and the street south. The west wall of the shed was about 105 feet long and the south wall 114 feet long. The west wall of the shed

was built by defendant in the spring of 1908 and had been finished about a month at the time of the injury, June 11, 1908.
The top of the wall, which was nineteen or twenty feet high,
slanted in, and was about two feet farther east at the top than
at the bottom.    The wall consisted of bin posts set in the
ground and three-inch planks spiked on the inner surface
thereof.    The bin was about half filled with coal when deceased and Krieger, at the time of the injury, were at work
on it putting up braces.    The day before they had worked
putting up braces on the south wall.    On the day in question the deceased and Krieger, by instruction of defendant's
foreman, began bracing at the middle of the west wall.    They
set a brace against the bin post; another post standing
straight, the foot of which was in line with the bin post but
about twelve inches north; the top of the bin post, owing to
the slant, was about two feet east of the straight post.    There
was a knot on the west surface of the bin post which interfered with the brace, and deceased put up a ladder, one rail
of it resting against the bin post and the other against the
straight post, and went upon it, his right foot resting on the
round next to the top and his left foot between the ladder and
the planking of the wall, facing south, and chopped off the
knot.    Deceased then took hold of the brace to adjust it, his
body being between the straight post and the planking east of
it, a space of about a foot.    Then came a crash.    Krieger,
who was at the bottom of the brace, jumped back, then looked
at deceased, who was at the top of the ladder holding on the
top of the brace and crying out.    The top of the wall had
come out, both posts had shifted, but the ladder still stood.
The top of the wall had moved about four feet and the
straight post moved west some, the space between the wall
and the straight post being narrowed from a foot to about
seven inches.    The deceased was removed to the hospital and
later died.    One of plaintiff's witnesses testified that he did
not see anything wrong with the wall before the crash; that

it looked good to him; that the ladder was nine feet high and the knot twelve feet from the ground.

A motion for a nonsuit was made based upon the contentions that plaintiff failed to prove negligence in constructing or maintaining the wall, or knowledge of defect, if any existed; that plaintiff's proof showed that deceased was engaged in making safe an unsafe place; and that he was guilty of contributory negligence. We do not think any of these contentions tenable, therefore the nonsuit was properly denied. In making her case plaintiff was not called upon to prove defects in the wall. The fact that it was constructed by defendant only a short time before the injury and gave way in the manner shown by the evidence was sufficient to warrant the jury in finding that it was not properly constructed, to the knowledge of defendant, in the absence of any showing as to cause of the movement. *Montanye v. Northern E. Mfg. Co.* 127 Wis. 22, 105 N. W. 1043; *Lipsky v. C. Reiss C. Co.* 136 Wis. 307, 117 N. W. 803; *Mulcairns v. Janesville,* 67 Wis. 24, 29 N. W. 565; *Parker v. Fairbanks-Morse Mfg. Co.* 130 Wis. 525, 110 N. W. 409; *Mueller v. Northwestern I. Co.* 125 Wis. 326, 104 N. W. 67. The foregoing cases and many others in this court clearly show that negligence was inferable from the facts proved. In *Mulcairns v. Janesville, supra,* a wall fell and the unexplainable falling was admitted in the answer, and it was held that the falling was *prima facie* evidence of negligence. The court said:

"If it had been properly constructed, it is common observation and within the common course of things that it would not have fallen; therefore it was not properly constructed; and it was negligently constructed, because, by the exercise of ordinary care and prudence, such a wall would have been so constructed that it would not have fallen, but would have stood alone. The city, in such a case, may well be called upon to explain the reason why; for the knowledge of the manner of the construction of its work is peculiarly in the city and its agent, for they constructed the wall. The city

must, by proof, repel and overcome this natural presumption."

It is further argued under this head that the deceased at the time of the injury was engaged in making a dangerous place safe, therefore the general rule that the master must furnish a reasonably safe place does not apply. This contention cannot be sustained, because the evidence was not sufficient to warrant the court in taking this question from the jury. Counsel do not even admit that the place was unsafe. In their brief they say: "Of course the defendant does not admit that the place was dangerous to the extent that would charge the defendant with lack of ordinary care if no further bracing had been ordered." But they say that when the defendant ordered braces placed it was notice to deceased. The purpose of the bracing was subject to explanation. In fact the shed was only half filled with coal at the time of the injury, and the state of the evidence at the close of plaintiff's case was clearly not such as to justify the court in holding as matter of law that deceased was knowingly making a dangerous place safe, so he did not assume the risk, nor was defendant relieved from the duty of furnishing a reasonably safe place. A great many authorities are cited by counsel for appellant on this point from this court and others, but we do not regard them controlling in this case. Of course, if deceased could be charged with knowledge as matter of law that the place was unsafe, then the cases cited by counsel would be pertinent, but we do not think the evidence will bear such construction. We refer to a few of the cases cited by appellant by way of illustration. For example, in *Mielke v. C. & N. W. R. Co.* 103 Wis. 1, 79 N. W. 22, the danger was known to the plaintiff, and it did not appear that the foreman of defendant had or could have secured, by the use of ordinary care, any knowledge superior to that of the plaintiff as to the particular danger; besides, it appeared that the plaintiff knew the danger. In *Peschel v. C., M. & St. P. R. Co.* 62

Wis. 338, 21 N. W. 269, recently considered by this court in *McKillop v. Superior S. Co.* 143 Wis. 454, 127 N. W. 1053, the question involved was negligence of a fellow-servant and knowledge of the danger. In *Porter v. Silver Creek & M. C. Co.* 84 Wis. 418, 54 N. W. 1019, it was held that the danger to the plaintiff was one which defendant could not reasonably have anticipated, and that the negligence, if any, causing the injury was that of a fellow-servant. *Liermann v. Milwaukee D. D. Co.* 110 Wis. 599, 86 N. W. 182, turns on the point that the negligence was that of a fellow-servant, the risk of which was assumed by deceased. *Larsson v. McClure,* 95 Wis. 533, 70 N. W. 662, turned upon the proposition of assumption of the ordinary risks of the employment, where the risk is obvious and open to the observation of all. To the same effect is *Walaszewski v. Schoknecht,* 127 Wis. 376, 106 N. W. 1070.

Nor does the instant case fall within the principle cited to our attention by counsel for appellant to the effect that, where the work is of such a nature that its progress is constantly changing the conditions as regards increase or diminution of safety, the safe-place rule does not apply. The deceased here was at work in bracing a wall which he had a right to believe, in the absence of anything appearing to the contrary, was safe. It is obvious, under the circumstances of this case, that many reasons might exist for putting up the braces besides the avoidance of present danger. Moreover, this was made more apparent from evidence introduced after nonsuit was denied. The evidence when plaintiff rested was far from being sufficient to charge deceased with knowledge of present danger or that the place was unsafe. There is no question here of the negligence of a fellow-servant. The evidence was ample to entitle the jury to find that the wall gave way because of improper construction, and the deceased had a right to rely upon proper construction in the absence of warning.

It is further contended that at the close of plaintiff's case the evidence showed that deceased was guilty of negligence directly contributing to the injury. This claim is based upon the position in which he voluntarily placed himself on the ladder between the wall and the straight post at the time of the injury, the injury, as it seems, being caused by the closing of the space where he stood between the post and the wall to seven inches. If he was not chargeable with knowledge of the unsafety of the place he was not negligent in going upon the ladder where he did, if that was the most convenient place to do the work. Deceased was a right-handed chopper. He could not do the work conveniently, if at all, from the other side, because he would have to use the axe with his left hand, so he had good reason for placing the ladder in the position in which it was when the wall gave way and crushed him. If there was evidence that he saw signs of danger and then put himself in the place of danger, the situation would be quite different, as is apparent from several cases cited by counsel for appellant, notably *Naylor v. C. & N. W. R. Co.* 53 Wis. 661, 11 N. W. 24, and *Johnson v. Ashland W. Co.* 77 Wis. 51, 45 N. W. 807.

2. Error is assigned because the court refused to direct a verdict for the defendant. What has been said on refusal to grant the motion for nonsuit applies here and need not be repeated. But in addition to the grounds urged in favor of a nonsuit it is claimed that at the close of all the evidence it appeared that deceased was warned of the danger, and that the injury was the result of an accident occurring unexpectedly and unaccountably. At the close of the evidence the case was stronger against the defendant than when the motion for nonsuit was made, aside from the question of warning. For example, there was evidence that the defects were not obvious, and a witness on the part of the plaintiff who was a coal-dock builder testified on rebuttal that the wall was not reasonably safe. The appellant relies strongly upon the

point that the deceased was warned and claims that the evidence is undisputed on that question. The deposition of one Krase, taken in California, is relied upon as establishing conclusively that deceased was warned of the danger. It appears from the record that there was no cross-examination of the witness Krase, nor any appearance on his examination on behalf of plaintiff. He testified substantially that he resided in California, but that on the day of the injury and for nine years prior thereto he resided in Manitowoc, Wisconsin; that he was in a blacksmith shop about fifty feet west of the coal shed where deceased was at work on the ladder; that he went east to a point ten feet from deceased and said to him, "John, get off from that ladder, it's cracking, it's coming sure. When I said 'it's cracking, it's coming sure,' I referred to the wall of the coal bin; it was coming out; it was coming towards him. He says, 'It won't come so soon.'" The witness further testified that he heard the cracking of the coal bin; that after the conversation he went to the lime shed, about 350 feet south of the place where deceased was working, and was there about ten minutes before the injury occurred; that he departed for California in November following the injury.

Considerable evidence was offered by respondent throwing discredit upon the evidence of the witness Krase. It was shown that Krieger, who was helping deceased, was with him during the morning except for a period of two minutes, and that he must have seen Krase if he came where he said he did, to a point about ten feet from deceased, unless Krase came during the two minutes, and even then that it was almost certain that Krieger would have seen him because of the course taken by Krase in going from the blacksmith shop to the point where he said he was, thence south to the lime shed. The evidence of Krase is disputed as to the location of the blacksmith shop with reference to the coal shed, there being evidence tending to show that the blacksmith shop was sev-

enty-five feet west and fifty feet south of where deceased was when injured; so Krase would have to travel fifty feet north and seventy-five east, or a trifle less by cutting corners, to get to the point described by him when he said he gave the warning. Krieger was with deceased all of the time, except while he went to the southwest corner of the shed, between fifty and sixty feet and then about fifty feet east. It seems very improbable that Krieger would not have seen Krase had he given the warning as related. Moreover, Krieger did not hear the first crash spoken of by Krase, nor did a witness Miller who was at the northwest corner of the shed in a position to hear. Neither Krieger, Miller, nor any one else saw Krase on the premises when he says he was there, or heard but one crack. It also seems improbable that deceased would have remained on the ladder if Krase notified him, as he said he did, and under the circumstances, because Krase says when he warned him and the first crack came the wall was coming out, but it did not come out so as to injure deceased until several minutes—ten minutes Krase says—afterwards. Now if there was a crack and the wall began to come out, naturally and ordinarily a prudent man would get out of danger's way at once, and would not remain in such peril for a period of ten minutes and until he was crushed. So upon all the evidence we are of opinion that whether warning was given as testified to by Krase was a jury question.

On the point as to whether the injury was the result of an accident the evidence is ample to support a finding that it was not, but was caused by defective construction. We shall not extend this opinion by a review of the evidence on the point. The cases cited by appellant on this subject are based upon facts quite different from the facts in the case now before us. In *Schultz v. C. & N. W. R. Co.* 67 Wis. 616, 31 N. W. 321, where a piece of coal fell from a tender on which it was heaped up above its top and injured a trackwalker, it was held that if such method of loading was negligent, yet the

plaintiff, having knowledge thereof, assumed the risk as one incident to his employment. On the question of accident the court said that such an accident had never happened before from such a cause; that it was a very strange and almost unaccountable accident; that it was common and might be necessary to load the tender in that way. The case has little bearing upon the instant case. The same may be said of *Sorenson v. Menasha P. & P. Co.* 56 Wis. 338, 14 N. W. 446; *Morrison v. Phillips & C. C. Co.* 44 Wis. 405; and *Steffen v. C. & N. W. R. Co.* 46 Wis. 259, 50 N. W. 348.

As said in the case last above cited, "The nature of the injury may indeed, in some cases, raise a presumption of negligence." So in the instant case the moving and breaking of the wall raised a presumption that it was not properly constructed. *Hupfer v. Nat. D. Co.* 119 Wis. 417, 96 N. W. 809. Other errors assigned we do not regard of sufficient importance to require treatment. We find no reversible error in the record.

*By the Court.*—The judgment is affirmed.