LEWIS J. KELSEY, Appellant, v. CHICAGO & NORTH WESTERN RAILWAY COMPANY.

**Railroad:** NEGLIGENCE: *Signals to fireman.* A locomotive fireman, while standing on the steam chest of the engine, saw a "quick long" signal given, which indicated in a general way that the engine was to back quite a distance, to couple to the rest of the train. It started, and he stepped down to the pilot, to go around to the cab; and, while moving to get hold of the flag staff to balance himself, the other cars were struck, and he was thrown off and injured. The engine had gone but about one and one-half car lengths. There was no evidence that the engine had been too rapidly or unskillfully backed, nor that the standing cars were negligently placed where they were. *Held,* that the giving of the signal was not negligence of which the fireman might complain, where the trainmen did not know and had no reason to think that the fireman was in a place of danger.

CONTRIBUTORY NEGLIGENCE. A locomotive fireman, while standing on the steam chest of the engine, adjusting one of its parts, saw a signal to back eight or ten car lengths, which was obeyed, and he started to step down to the pilot beam, intending to go around into the cab as soon as the engine stopped. While stepping forward to grasp the flagstaff, the cars which the engine was backing toward, to couple with, were struck, the engine having moved but one or two car lengths; and he was thrown to the ground by the shock, and injured. There was a handrail and foot board by which he might have returned to the cab on the engineer's side, and there was a brace from the pilot beam to the boiler front,

which was within reach, by which he could have steadied himself. As an excuse for not going in on the engineer's side, it was stated that the cab window was fastened inside, and the engineer was busy. *Held*, that the fireman was guilty of contributory negligence.

*Appeal from Clinton District Court.*—HON. ·P. B. WOLFE, Judge.

MONDAY, OCTOBER 10. 1898.

ACTION to recover damages for personal injuries sustained by the plaintiff while in the employment of the defendant as a locomotive fireman. He alleges that the engine upon which he was employed, with several cars attached thereto, "was suddenly, too rapidly, unskillfully, and negligently, without proper warning or signal, backed against other cars of said train, which had been negligently left standing by defendant's employes upon the track," by reason of which he was thrown from the engine and seriously injured, without fault or negligence on his part. The defendant answered, denying generally; and, at the close of the evidence on behalf of the plaintiff, the court, on motion of the defendant, directed a verdict for the defendant, and rendered judgment accordingly. Plaintiff appeals.—*Affirmed.*

*Hayes & Schuyler* and *Barker & McCoy* for Appellant.

*Hubbard & Dawley* for appellee.

GIVEN, J.—I. The grounds of defendant's motion for a verdict were that there is not sufficient evidence to sustain a finding that the defendant was guilty of the negligence alleged, and that the evidence shows without any dispute that the plaintiff himself was guilty of negligence which directly contributed to his injury. Plaintiff was, at the time he was injured, and had been for over three years, in the employ of the defendant as a locomotive. fireman, and was familiar with the duties of a fireman and the manner of making up

and moving trains of cars.   On the night of June 24, 1893,
the engine upon which he worked was engaged in making up
a train of freight cars in the yards at Clinton, preparatory
to running west.   As was his duty, the plaintiff had lighted
the headlight and sidelights on the front of the engine before
it was brought from the roundhouse.   After setting out some
cars, the engine, with eight or ten cars, attached, was moving
to a point west of Fifth street, where it stood for a time,
headed west.   The next thing to be done, upon signal, was
to back the engine and eight or ten cars attached thereto
eastward, and to couple to the other cars composing the train.
While the engine was thus standing still, the plaintiff got
down from the cab on the north or right-hand side, and passed
around to the front of the engine, to see if the lights were
burning properly, and, in doing so, discovered that the cap
to what is called the "peep hole" was not in proper position.
It appears that this cap is removed when the engines are
being cleaned in the roundhouse, and that it is the duty of
the fireman to see that it is in place when the engine is brought
out, because, if not in place, it affects the draft, and impedes
the generation of the steam.   Seeing that the cap was not
closed as it should be, the plaintiff went upon the front part
of the engine, and, standing upon the steam chest, tightened
the cap, and, while doing so, observed a signal given by some
one in the rear of train, for the engine to back east, so that
the coupling could be made.   The engine and cars attached
were promptly moved backward, and, while moving, the plain-
tiff stepped from the steam chest to the bulkhead of the
engine, stooping down to get hold of the flagstaff to balance
himself, with the view to getting off the engine at the front,
and passing around to the entrance of the cab.   While in
that position, the standing cars were struck by the moving
cars, and the plaintiff thereby thrown from his position on
the bulkhead to the ground, and quite seriously injured.
There was a footboard with a handrail extending from the
cab to the front of the engine, by which the plaintiff could

have, after adjusting the cap to the peep hole, returned to the cab in safety. He gives as a reason for not doing so that the cab window was closed, so that it could only be opened on the inside, and that the engineer was busy at the time. It also appears that there were two large iron braces in front of the engine, one of which was within easy reach of the plaintiff when on the bulkhead. The evidence shows that, in signaling for such movements, different signals are used, so as to indicate the distance to the point of coupling. Plaintiff describes the mode of signaling as follows: "If you want to move to a position, a swinging motion of the lantern means to back up. If it is quite a distance, they will give a quick signal, and sometimes a long signal. As a general thing they give a fast signal. If you get a fast signal, you have a good distance to go. In getting that, you expect to go eight or ten car lengths. If it is only one or two car lengths, you get a little jerk. If it is two little jerks, or three little jerks, you are to know that it is that number of cars, or the front of the train is to move that far." Witness Olny describes it as follows: "If the distance was short, they could give a slow easy signal, and, when they were about to strike, they would hold their lamps still, indicating they were pretty near there. In giving this round motion, there was a difference in the sweep of the signal to indicate a long distance or a short distance between the cars to be coupled. A quick motion, that there was quite a distance to go. The slow motion would indicate that you didn't have so far to go." Mr. O'Donald says: "If you want a train to back up, if they have a good distance to go, they give a big signal, the wide swing of the arm, a good, big swing, so they know there is quite a distance to go. And, if it is a short distance, they move the lamp slowly. These signals are given for the purpose of regulating the working of the engine and the working of steam upon the engine." Plaintiff says: "The man was on the side of the train, and gave the signal, swinging round with the full length of the arm. It was

a quick long signal, and signified that we had quite a long distance to go before we came to the rest of the train." He further states: "At the time I saw the signal, we had gone back not over a car and a half. I stepped down onto the pilot, and stooped over, and, before I could get hold of the flag standard, they struck. I was going to sit down, instead of jumping off in the night-time, until it struck." Again he says: "It was while in the act of stooping over, and before I got down far enough to take hold of anything, that they struck and knocked me off. I did not take hold of this brace on the front end, that is down by the pilot beam. There was nothing between it and me. We never get hold of that, even when the engine is going, when we let go of the handrail."

II. There is no evidence whatever to support the charge that the engine and cars attached thereto were suddenly, too rapidly, or unskillfully moved against the standing cars, nor that there was any negligence in having the standing cars on the track where they were. The only indication of negligence upon the part of the defendant's employes was in the kind of signal given, or, in other words, that the signal given indicated a longer distance to the point of coupling than should have been indicated. The signals only indicate in a general way the distance to be passed, and the employe giving that signal did not know, and had no reason to expect that the plaintiff was in a place of danger, as he was. The signal was for the government of the movement of the engine and cars attached, and seems to have accomplished that purpose in a proper manner. We have not set out the evidence in full on this subject, but sufficiently so, we think, to show that there was no negligence in the giving of the signal of which plaintiff has a right to complain.

III. Knowing, as the plaintiff did, that the engine and eight or ten cars were being moved backward, and that in a very brief time they would come in contact with the standing cars, we think it was manifest negligence on his part not to have returned to the cab by way of the running board, where

the handrail would have protected him from danger. It was not a sufficient excuse for going as he did that the engineer was busy at the time, and that the window would have to be opened from the inside. It was the way of safety, and he should have taken it. He testifies: "I knew what we were backing up for. I knew the cars were coming together afterwards. I knew that we would not expect to find them in less than eight or ten car lengths. I didn't know the exact distance. I expected them to back until they struck or reached the other cars. That is the reason that I started to sit down on the pilot beam, and got thrown off because they came together sooner than I thought they would." He failed to protect himself by taking hold of the brace or flag standard, as he could have done. The plaintiff has no reason whatever to assume that the impact of the cars would be a few seconds later than it was, and he was unquestionably guilty of great negligence in putting himself in that place of danger under the circumstances then known to him. We are in no doubt that the motion for verdict was properly sustained, and the judgment is therefore AFFIRMED.