FRED PLANTZ, Appellee, v. KREUTZER & WASEM et al., Appellants.

**MASTER AND SERVANT:** Assumption of Risk—Dangerous Places
1 —Knowledge of Servant—Dangerous Methods of Work.

. (a)   Deliberately choosing a dangerous rather than a safe method of performing work, with resulting injury to the servant, presents a case of both (1) assumption of risk and (2) contributory negligence. In such case, the servant's negligence becomes the proximate cause of the injury.

(b)   The servant assumes the risk of all dangers against which he may protect himself by the exercise of ordinary observation and care.

(c)   An employee assumes, as an incident of his service, any risk which arises from the permanent, visible and understood conditions of his master's plant.

(d)   Recovery cannot be had when the servant voluntarily exposes himself to known and appreciated danger, or to a danger which he ought to know and appreciate by the exercise of ordinary care.

(e)   It is not negligence to expose a servant to any danger which is obvious to, and understood and appreciated by, the servant.

PRINCIPLE APPLIED:   A lumber shed, with driveway, had a south door 16 feet, and a north door 8½ feet high. Plaintiff, a man of mature years, had worked for the defendant 8½ days in hauling lumber, using defendant's team.   With a full knowledge of the height of the doors, plaintiff, standing on top of a load of lumber, the top of which he knew was at least 5½ feet from the ground, drove the team himself through the south door and along the driveway, and stopped the horses with their heads under the north doorway, intending to take on other articles and then drive out through the north door.   He wound the lines around a stake on the wagon, and among other articles then loaded was a box of glass, which defendants' foreman directed him to hold upright.   Plaintiff was

practically six feet tall. Plaintiff held or steadied the box of glass with his left hand, and, without adjusting his body so it would miss the top of the door, reached for and unwound the lines. The team started instantly in consequence thereof, and, the team not stopping in response to plaintiff's cry of "Whoa," plaintiff was hit by the upper part of the door and injured. The team was not in the habit of starting without a suggestion from the driver. The sole negligence assigned was in furnishing plaintiff an insufficient doorway through which to drive. *Held*, plaintiff could not recover because (a) he assumed the risk incident to his position on the load,—the risk that the horses might start,—and (b) he was guilty of contributory negligence—this negligence being the proximate cause of the injury.

**TRIAL: Instructions—Applicability—Speculation on Facts Without Evidence.** An instruction is manifestly erroneous which turns the jury loose in the zone of mere speculation and permits them to find the existence of facts, (a) without evidence and (b) in flat contradiction to the only rational inference which the testimony will bear.

PRINCIPLE APPLIED:   (Additional to No. 1.) . The only rational inference possible under the testimony was that the horses started *solely* from the voluntary act of the plaintiff in unwinding the lines, with consequent suggestion to the horses to start. But the court, *inter alia*, instructed:

"If, after the load on the wagon had been completed, and *while the plaintiff was attempting to take the lines in his hands for the purpose of controlling the team*, and before he had an opportunity so to do and determine how he would attempt to pass through said opening, and before he had opportunity to take necessary precaution for his own safety in so doing, the team suddenly *and without word or sign from the plaintiff and without his voluntary action or conduct*, passed rapidly forward and through such doorway and plaintiff was thereby struck and thrown from such load and injured, plaintiff would not be guilty of contributory negligence," etc.

*Appeal from Marshall District Court.*—CLARENCE NICHOLS, Judge.

' SATURDAY, NOVEMBER 20, 1915.

REHEARING DENIED FRIDAY, APRIL 7, 1916.

ACTION for personal injuries. Opinion states the facts. Judgment for the plaintiff. Defendant appeals.—*Reversed.*

*C. H. Van Law,* for appellants.

*Carney & Carney,* for appellee.

GAYNOR, J.—This is an action to recover damages for personal injuries. On or about the 8th day of August, 1912, plaintiff was employed by the defendants as a teamster in defendants' lumberyard, and was so employed for several days prior to receiving his injuries. On this particular day, he drove down into defendants' yards and took on a load of plank, and then was directed to drive into the shed to get some mop boards. He drove in the south door of the shed and proceeded northward through an alleyway, in the shed, to the north door, and stopped with his horses' heads right at or under the north door. Wilson, defendants' foreman, was with him at the time. Wilson went up a little ladder on one side of the alleyway and got the mop boards. The shed is about 60 feet long. The south door through which plaintiff entered is about 16 feet high. The north door is 8½ feet high. There is lumber piled on either side of the shed. When he reached the north door, Wilson said to him: ''Wait here, and I will get the mop boards.'' He got the mop boards and handed them to the plaintiff, who was then standing on the top of the loaded wagon. Wilson then directed him to wait a bit and said: ''I will get a box of glass.'' Wilson got the box of glass and handed it to him, and said: ''You want to hold the box of glass up.'' He set the box of glass on top of the loaded wagon. As he set the box of glass down in front of him, he held it with his left hand and reached over with the other hand to gather up the lines which were tied around a stake, or, as he described it, ''off the deck or stake.'' Just as he reached over for the lines and grabbed them off the stake, the team started. Plaintiff hollered ''Whoa!'' but the horses continued, and he came in contact with the upper part of the doorway and was knocked off and hurt.

Plaintiff's testimony is that, after he had received the mop boards and placed them on the loaded wagon, and Wilson

had handed him the box of glass with directions to hold the glass up, he bent forward, reached for the lines, and grabbed them off the deck, or stake, and the team started. He says: "I just got hold of the lines when they started, all at once." The top of the north door, through which plaintiff attempted to pass, was 8½ feet from the ground. The top of the loaded wagon upon which he was at the time was 5½ or 6 feet from the ground. Plaintiff was 5 feet 10 inches tall. The height of the box of glass is not shown. Plaintiff's contention is that the horses started without any command from him to do so— started as soon as he grabbed the lines. Plaintiff received severe injuries. He charged the defendants with negligence. The acts, or omissions to act, which he charges constitute actionable negligence and the acts, or omissions to act, upon which he predicates his right to recover as for negligence, are stated in his petition as follows:

(1) Defendants were negligent in providing an unmanageable team for plaintiff with which to carry on his work; (2) defendants were negligent in providing an unsafe place in which to work, in reference to the situation of the lumber piles, alleyways, etc., and in that the doorway was so unreasonably low that plaintiff could not safely drive from said building on top of said load, and escape contact therewith, under the facts and circumstances as outlined in this petition; (3) defendants were negligent in failing to warn said plaintiff of his danger on the particular day in question, and in reference to the particular instance herein described; (4) defendants were negligent in failing to warn plaintiff of the danger in handling and managing said team; (5) defendants were negligent in so constructing their lumber shed and exit therefrom on the steep incline that the danger from contact with the top of said door was greatly increased.

At the conclusion of all the testimony, the defendants moved the court to direct a verdict for the defendants on the following grounds:

(1) Because there is no testimony in the case to sustain

a verdict in favor of the plaintiff; (2) because the undisputed testimony shows that the plaintiff is guilty of such contributory negligence as to relieve the defendants of any liability; (3) because there is no proof showing that the defendants were guilty of any negligence rendering them liable; (4) because the undisputed evidence shows that the injury suffered by the plaintiff was due to the fact, or claimed fact, that the team started without any direction or command from the plaintiff, and that, by reason thereof, the plaintiff was taken unawares in going through the door or gate; and the undisputed evidence shows that the defendants did not know and were never advised, at any time, that the team which plaintiff was driving would start to move forward with a load without a command or direction or some effort on the part of the driver to start them; that, if the plaintiff was injured by reason of the starting of such team, or habit of such team to start without command or direction, such fact was not known to the defendants, and they were not in a position, nor were they required, to advise the plaintiff, or caution against any such hazard or danger; that any injury sustained by the plaintiff, by reason of the starting of the team without command or direction of the driver, was among the risks assumed by the plaintiff.

This motion was by the court overruled. The court, however, in the submission of the case to the jury, withdrew from their consideration, as a basis of negligence, the first, third and fourth specifications of negligence, and submitted to the jury only the second and fifth, saying to the jury:

"The claimed negligence relied upon by the plaintiff herein, and the only claimed negligence which the court submits to you for your consideration, is as follows: 'In providing the plaintiff an unsafe place in which to work, in that the doorway at the north end of the driveway, through the lumber shed, was so low as to be unsafe for the use of plaintiff as a teamster.' "

It was on this specification of negligence that the cause

was submitted to and determined by the jury, and upon this specification, under the proof offered, the jury returned a verdict holding the defendants guilty of negligence, and the plaintiff free from any negligence contributing to his injuries. In its fourth instruction to the jury, the court said:

"The question for you to consider is whether the plaintiff has established by a preponderance of the evidence that the place in which he was required to work was not reasonably safe for him to use in performing his work as a teamster on account of the doorway on the north end of the driveway being of insufficient height."

And it thereupon directed the jury, in determining this question, to consider the height of the doorway, the arrangement of the lumber shed, its necessity for use by plaintiff, both with and without loads, the height of the loads likely to pass through the same, and any other fact or circumstance bearing upon the question, and said:

"If therefrom you find  .  .  .  that such doorway was so low as to render the place unsafe for plaintiff's use as a teamster, and that such insufficient condition was due to a failure on the part of defendants to exercise ordinary care in respect thereto, then the plaintiff has established negligence on the part of the defendants in failing to furnish him with a reasonably safe place in which to perform his work," provided they found that this negligence was the proximate cause of the injury.

From the foregoing, it is apparent that this cause was submitted to the jury and determined upon the theory, first, that the defendants are negligent, if negligent at all, in that they provided for the use of the plaintiff as their teamster, this north doorway, with its opening but 8½ feet in height, and left it to the jury to say that, as a matter of fact, the defendants were negligent in furnishing for the plaintiff an opening through which to pass, of 8½ feet in height.  To find the defendants guilty of actionable negligence, the jury must have affirmatively found that the defendants were negligent

in maintaining the doorway at that height, and that this negligence was actionable, and the proximate cause of the injury.

There was no dispute as to the height of the doorway. There was no dispute that the plaintiff approached it from the south; that he stopped his horses with their heads under or at this opening. There is no dispute as to the height of the load on which plaintiff was standing. There is no dispute as to the purpose for which the plaintiff went there, or as to what he was doing, or that he intended, after he completed the load, to pass out through this doorway. The only question submitted to the jury as a basis for recovery, so far as the negligence of the defendants is concerned, was the fact that this doorway was but 8 feet 6 inches high. It is apparent that, as plaintiff approached this doorway, it was in plain view. That he knew approximately the height of this doorway is not in dispute. While upon the witness stand he testifies that the doorway through which he attempted to pass was about 8 feet high. He gives also the width of the door, approximately as the undisputed evidence shows it to be. These observations must have been made before or at the time that he attempted to pass through it, for he says that he never visited the place after the injury; that he never made any observations of it after the injury. His estimates, therefore, must be based upon knowledge acquired before or at the time of the injury. He drove within a few feet of the opening and stopped.

The court withdrew from the consideration of the jury any negligence based upon the character of the team furnished plaintiff for use; withdrew from the jury's consideration any negligence predicated on the claim that plaintiff was not warned of the character of the team, or of the dangers attending an effort to pass through the opening. The door had been there for many years before this injury, and had been used by the defendants in the transaction of their business. It was a permanent structure, plainly perceivable by anyone who

attempted to use the door. When he drove up to this door with this loaded wagon, the fact that there was a space of only 3 or 3½ feet above the load to the top of the driveway was just as apparent to him as it was to the defendants, or to any other employee of the company. It was apparent that he could not pass through that opening, upon that load of lumber upon which he was at the time, without adjusting himself to the conditions that confronted him. He knew, or, by the exercise of ordinary thoughtfulness should have known, that if he attempted to pass through that doorway, without adjusting himself to the conditions there apparent and open to him, he must of necessity come in contact with the top of that doorway. He stopped there, wound his lines around the deck or stake, and proceeded to finish his load. After he had finished it, he reached for the lines, grabbed them, and the horses started. That the horses might start under those conditions was just as apparent to him as to the defendants or any of their employees. That, if they did start before he was adjusted in his position to the conditions that confronted him, he would be brushed off the load, was just as apparent to him as to the defendants or any of their employees.

Did he assume the risk incident to his position, with a knowledge of all the facts out of which the peril arose—the risk that the horses might start under those circumstances, and that injury would be inevitable? This, we think, is the pivotal question in this case. Answered in the negative, the verdict must stand; answered in the affirmative, the case must be reversed. We answer in the affirmative for the following reasons:

1. MASTER AND SERVANT: assumption of risk: dangerous places: knowledge of servant: dangerous methods of work.

If the doorway was too low to permit the plaintiff to pass through or under without adjusting himself to the conditions, this fact was known to him. The team attached to the load was in his possession and subject to his control. The sudden starting of the team involved the master in no negligence, nor can negligence be predicated on the thought that

the master, by the exercise of reasonable care, might have known that the team would start without command and before the plaintiff could adjust himself to the conditions.

We must assume that it was the intention of the plaintiff at the time that he reached for the lines, to adjust his body to the conditions there apparent, and, by so adjusting his body, avoid injury. We must assume that it was his intention to control the horses and adjust himself to the *apparent* conditions before the horses started, and so pass out under this doorway in safety. That, if the horses had not suddenly started, he would have done this, is also apparent. That he did not have time to adjust himself is not chargeable to any fault of the master. That he did not adjust himself is due to the fact that, with the danger of proceeding through the doorway in an upright position, he grabbed for the lines before assuming an attitude of safety.

The horses did not start until he grabbed the lines. Why the horses started cannot in this record be traceable to any act, except the act of the plaintiff in grabbing the lines. They were not told to go by anyone. They had been standing at this point for some time and had not attempted to move until plaintiff grabbed the lines from the deck or stake. The plaintiff then, without adjusting his body to the conditions which he says rendered the passage under this doorway unsafe, grabbed the lines and the horses started, and he was injured. It was his intention to pass out through this doorway, knowing the exact conditions under which he must pass. He failed to control the action of the team under his control or given to his control, and failed to adjust his body to the dangers apparent. That the horses were not controlled before he had adjusted his body to the situation was not the fault of the master. That the act of grabbing the lines might suggest to the horses that he desired them to proceed forward was as apparent to him as it was to the master. The only act to which the sudden movement of the horses can be traceable is the act of the plaintiff in grabbing the lines.

Even where the master is negligent, where he has, in fact, done the thing, or omitted to do the thing, charged as negligence, and the servant knows this, and knows that, under certain conditions, or in pursuing a line of conduct, he will receive injury, and the agencies out of which the peril arises are under his control, or within his control, and not within the control of the master, and, notwithstanding this, he creates the conditions, or pursues the line of conduct out of which the peril arises, and the injury is due, not alone to the act of the master charged, but to the act of the servant in creating the conditions or pursuing the conduct which, with or without the act of the master, is the immediate, contributing cause of the injury, the servant cannot recover.

Where the act, or the omission to act, upon which negligence is predicated, is known to the servant, and, as a reasonably prudent man, he knows, or by the exercise of reasonable care should know, that the master's act or omission to act involves perils to the servant, and that a certain line of conduct on his part is prudently necessary to avoid injury, and that by pursuing a certain line of conduct open to him he can avoid injury from the negligence of the master, a failure to exercise that care involves the servant in such negligence that the master's negligence becomes the remote, and the servant's negligence, the immediate and proximate cause of the injury; and when he pursues such a line of conduct, with a knowledge of the master's derelictions, he assumes the risk attendant upon the master's wrong. Or, in other words, if the master is negligent and the servant knows this, or knows all the facts upon which the master's negligence is predicated, and, as a reasonably prudent man, knows, or ought to know, that danger to himself lies in a certain line of conduct, and another safe way is open to him, which as a reasonably prudent man he can see and appreciate, and he pursues the line or course that involves him in danger from the master's negligence, and fails to pursue the line of conduct open to him which would avoid peril from the master's negligence, then, as a matter

of law, his act, or failure to act, becomes the proximate and immediate cause of the injury, and the master's, the remote, and by so doing he assumes the risk or waives the master's negligence. Or, putting the thought still another way, where one knows and appreciates danger to himself, by reason of conditions that confront him, which are open and known to him, and knows that to pursue a certain line of conduct involves him in peril because of the conditions, and there is another line of conduct open to him which involves no risk from the conditions upon which the master's negligence is predicated, and he assumes to pursue the line which involves the risk, his negligence in so doing become the immediate and proximate cause of his injury, and he assumes the risks incident to his conduct.

In the case at bar, the defendants could not have told the plaintiff anything as to the situation, as to the location and construction of the doorway and the danger to him, in the event that the team started while he was standing upon the load, that he might not reasonably be expected to have known as well as the master. He was a man of mature years and had been driving this team for 8½ days prior to the injury. He knew the height of his load; he knew the height of the doorway; he knew that, if the team started while he was in an upright position, he could not pass under that doorway in safety. He must have understood, and therefore appreciated, the fact that it was necessary for him to adjust his position, in view of the load and the height of the door above the load, before starting the team. Without doing this, however, as he says, he grabbed for the lines and the horses started. There is no evidence that the horses started from any other cause than the act of the plaintiff. That they started from any other cause, in view of the whole record in this case, is a mere matter of speculation and surmise, and based upon no tangible evidence. The court withdrew from the consideration of the jury any charge of negligence based on alleged vice in this team. In the face of this record, the fact seems to be conclusively

established that this team was never known to start except on suggestion from the driver that they should start. The only evidence to the contrary is the testimony of Hausafus, who said, "This Tim horse had the habit of jumping when he started;" but confines this statement to the fact that this occurred when this horse was driven single. He said that this occurred when he was teaming. He said that, when he was teaming, he drove this Tim horse single. There is no evidence that this team, as then constituted, was ever known to start without command. The evidence is that this team never did start without command, or something to indicate that it was desired that they should start.

On the question of plaintiff's contributory negligence, the court in its instructions to the jury recited the facts, which were undisputed in the evidence, touching the height of the doorway, the height of the load, the place where the horses were standing, and said:

2. TRIAL: instructions: applicability: speculation on facts without evidence.

"Such being the situation, if the plaintiff deliberately started the team forward and undertook to pass through the doorway in a standing posture, and was struck by the top of the doorway and thrown from the loaded wagon and injured, he would be guilty of contributory negligence as a matter of law; but if, after the load on the wagon had been completed, and *while the plaintiff was attempting to take the lines in his hands for the purpose of controlling the team,* and before he had an opportunity so to do and determine how he would attempt to pass through said opening, and before he had an opportunity to take necessary precautions for his own safety in so doing, the team suddenly and *without word or sign* from the plaintiff and *without his voluntary action or conduct,* passed rapidly forward and through such doorway, and the plaintiff was struck and thrown from such load and injured, plaintiff would not be guilty of contributory negligence, provided you believe that he could have passed safely through such opening on the top of the load, had he secured control of the team and had

an opportunity to determine the best method of passing through such doorway on the top of such load, and provided you believe and find that the plaintiff, as an ordinarily careful and prudent man, believed there was no danger that such team would start unbidden up through such door,'' thus leaving the jury to speculate, and by speculation find a fact to excuse plaintiff's conduct, without any evidence to support the fact. Under the instructions, the jury was permitted to find that a fact existed that excused the conduct of the plaintiff and exonerated him from the charge of negligence, without evidence of the fact. In fact, the finding, if made as suggested by the instruction, would be contrary to and against the plaintiff's own testimony as to just what he did immediately preceding the forward movement of the horses. His testimony is, speaking of the box of glass:

''I set it down in front of me; held it with my left hand and reached over with my other hand and the team started. I got the lines off the stake and the horses started. I reached for the lines and grabbed them off the stake and the team started. I just got hold of them and they started all at once.''

Juries cannot be permitted to speculate as to the existence or nonexistence of material facts. They cannot be permitted to rest their finding upon mere surmise or speculation. There must be a basis in the evidence before the jury can be permitted to say that a fact exists. Under this record, the team had not started, had indicated no purpose to start, until the plaintiff reached over and grabbed the lines off the stake. The only rational inference from his testimony is that, after he got his load completed, he went forward or reached forward, grabbed the lines off the stake about which they had been wound, and the horses started, and the jury was permitted to say in the face of this evidence that the team suddenly started, without word or sign from the plaintiff and without his voluntary act or conduct.

Thus we see that the conditions there warned the plaintiff that he could not pass through this door in an upright

position; that it was necessary to adjust his body to the conditions before the horses started; that he knew that, by adjusting himself to the conditions there, he could pass through under this door in safety. It was his intention to pass through this door, yet, without adjusting himself, he reached forward and grabbed the lines and the horses started. The horses clearly were started by the voluntary act and conduct of the plaintiff, and started at a time when he, as a reasonably prudent man, knew that he was in a position of peril; that he could not pass through under the door in that position; that it was necessary to adjust himself on the load to the conditions, before attempting to pass through, and this he did not do.

We are satisfied that the record in this case does not support a verdict for the plaintiff. We are satisfied that the court should have sustained defendants' motion for an instructed verdict. As supporting the propositions herein stated, see *McCarthy v. Mulgrew*, 107 Iowa 76; *Sorenson, Admr., v. Menasha Paper & Pulp Co.*, 56 Wis. 338 (14 N. W. 446); *Sutton v. Des Moines Bakery Co.*, 135 Iowa 390; *Muldowney v. Illinois C. R. Co.*, 39 Iowa 615; *Newbury v. Getchel, etc., Mfg. Co.*, 100 Iowa 441; *Gulf C. & S. F. R. Co. v. Montgomery* (Texas), 19 S. W. 1015; *Houston & T. C. R. Co. v. Evans* (Texas), 92 S. W. 1077; *Texas M. R. Co. v. Ellison* (Tex.), 87 S. W. 213; *Reynolds v. Missouri, K. & T. R. Co.* (Kas.), 78 Pac. 801; *Jordan v. City of New York*, 60 N. Y. Supp. 696; *Artman v. Kansas Central R. Co.*, 22 Kas. 296. See, also, *Hartman v. City of Muscatine*, 70 Iowa 511; *Parkhill v. Town of Brighton*, 61 Iowa 103; *McGinty v. City of Keokuk*, 66 Iowa 725; *Barce v. City of Shenandoah*, 106 Iowa 426; *Ford v. Chicago, R. I. & P. R. Co.*, 106 Iowa 85; *Kelsey v. Chicago & N. W. R. Co.*, 106 Iowa 253; *Landis v. Interurban R. Co.*, 166 Iowa 20.

For the reasons hereinbefore set out, the case is— *Reversed.*

DEEMER, LADD and SALINGER, JJ., concur.