DOMINICO CONTRI, Administrator of the Estate of OCTAVIA CONTRI, Deceased, v. HOLLINGSWORTH COAL COMPANY, Appellant.

**Mines and mining:** INJURY TO EMPLOYEE: CONTRIBUTORY NEGLIGENCE: ASSUMPTION OF RISK: EVIDENCE. In this action for the death of an experienced coal miner while attempting to cross the cage or elevator at the bottom of the shaft, and who was killed by a sudden starting of the cage, the evidence is reviewed and held to show that his knowledge of the conditions and operation of the cage was such that he was guilty of contributory negligence, and that he assumed the risk in attempting to use the cage as a passage way in the absence of the cager.

**Same:** CUSTOM: EVIDENCE. Evidence of the use of the cage as a passageway when the cager was in charge, and after ascertaining that it had not been signaled to go up, was inadmissible in proof that such use as deceased attempted to make of the cage was customary.

**Same.** Where an employee has been expressly directed not to put himself in a place of danger he can not avoid the charge of negligence arising from disobedience of the order by proof of a custom: nor can he excuse an act which is negligent *per se* by proof of a custom on the part of others.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

SATURDAY, JUNE 5, 1909.

SUIT to recover for the death of the plaintiff's intestate. Judgment for the plaintiff, from which the defendant appeals.—*Reversed.*

*Parker, Hewitt & Wright, W. E. Miller* and *C. Woodbridge,* for appellant.

*J. D. Wallingford* and *Nugent & Manion,* for appellee.

SHERWIN, J.—Prior to the 5th day of February, 1908, the defendant was operating a coal mine, and Octavia Contri, the deceased, was in its employ as a miner. The shaft entering the mine where Contri worked was about 150 feet deep, and there were two cages or elevators in it, side by side, which were operated on a drum so that both cages were moved at the same time, one up and the other down. The cages were operated by a steam engine which was situated about thirty feet from the mouth of the shaft. The floors of the cages had car tracks on them, and, when either one was at the bottom of the shaft such tracks connected with the tracks in the mine, so that cars of coal that were to be hoisted to the surface could be run onto the cages. These tracks run north and south. Adjoining the framework in which the west cage operated, and immediately west thereof, there was a manway or runway made for the use of the miners in passing from one side of the shaft to the other. A board partition separated the manway from the west cage, and along said partition, running north and south, there was a plank walk about two and one-half feet wide; the plank being across stringers running north and south. About seven or eight feet west of this walk there was a hole in the ground about eight feet deep, called a "sump." It was placed there for the purpose of draining the water from the base of the shaft and was connected with the shaft by a perforated pipe laid in a trench that was about thirteen inches deep and eighteen inches wide where it passed under the walk at the west of the shaft. There was a platform over the sump, upon which rested a steam pump which was used at times to pump the water from the

sump.  Aside from the trench connecting the sump and base of the shaft, the space between the two was solid ground without obstructions.  On the morning of the accident, Contri, the deceased, with others, was lowered to the bottom of the shaft a little before 7:30 o'clock, which was the hour at which work in the mine commenced. He left the shaft and went to a point a few feet south thereof where he kept his tools.  His work was north of the shaft, and, after securing his tools, he went back north and started to pass the shaft through the manway.  After taking a step or two along that way, however, he returned to the southwest corner of the shaft and attempted to cross the west cage, which was then resting at the bottom of the shaft.  As he stepped one foot on the cage, it was started suddenly and swiftly, and he was thrown down on the cage with his legs hanging over the side thereof. As the cage ascended, he was caught in the closed shaft and killed.

Several grounds of negligence are charged, and for the purposes of this case it may be conceded that one or more of them are sustained by the evidence; but at the close of the evidence the defendant moved for a directed verdict on the grounds, among others, that the record conclusively showed contributory negligence on the part of the deceased in attempting to cross the cage, and the assumption of the risk incident thereto.  As we deem a determination of these questions decisive of the case, it is unnecessary to discuss the other questions presented by counsel.

The deceased was an experienced miner and had been at work in the defendant's mine for several months prior to the accident.  He knew the location and purpose of the runway and had used it more or less in passing to his work north of the shaft. He knew the way in which the cages were operated and the signals that were used in their movement.  He knew that it was at all times dan-

1. MINES AND MINING: contributory negligence: assumption of risk: evidence.

gerous to attempt to cross a cage, and especially so when the cager was not at his post of duty, for he had repeatedly been warned of the danger in so doing and had been directed not to cross them. That he fully understood such warnings and directions is clearly shown by the record. He knew that the cager was not required to be on duty before 7:30 a. m., and that, when the men working in the mine went down the shaft before that time, the operation of the cages was controlled by some one of the men so descending, and that it was done by signaling from the bottom of the shaft; the signal consisting of a bell at the top thereof, which was rung by means of a wire extending to the bottom. The deceased was killed before 7:30, and when he attempted to step onto the cage he knew that the cager was not yet there, and that the movement of the cages would be directed by some of his fellow workmen until the arrival of the cager. One of his fellow workmen had, in fact, signaled for the hoisting of the cage upon which he attempted to step only two or three minutes before the accident; but whether Contri heard the signal or not may be a doubtful question under the evidence. There is evidence tending to show that it was frequently necessary to take up one or two of the planks in the manway walk immediately over the trench and pipe, for the purpose of opening holes in the pipe for the admission of water, and that the plank so removed often remained out of place for some time, all of which was known to the deceased and to all others who were called upon to use the manway. It is also shown that two of such plank, each ten inches wide, were out on the morning in question. The record shows that when the steam pump, located at the sump, was in use, the steam escaping therefrom somewhat obscured the view along the manway; but it is conclusively shown that at other times there is no difficulty in seeing the way, and hence no danger in passing over the walk, even if the planks be-

longing over the trench are out of place. The evidence also conclusively shows that the pump had not been operated that morning, and that it was not in operation at the time of the accident. It is true that one of the plaintiff's witnesses testified that, when he started along the manway that morning just before the deceased did, the dripping water or steam put his headlight out; but he did not testify that the pump was then or had been at work that morning, or that with the use of a light he could not have safely used the manway. There was never any natural light at the bottom of the shaft, and every man whose work or duty called him there had to provide his own light. The deceased had a light when he started through the manway and when he returned and stepped onto the cage. The planks were up the night before, but whether the deceased knew of such condition is not shown. However, if he did, he knew that the hole could be safely crossed, and, if he did not, there was no excuse for attempting to cross the cage. From whichever way the action of the deceased be viewed, he was clearly guilty of contributory negligence, and he as clearly assumed the risk of his unauthorized conduct. *Lindquist v. Plaster Co.,* 139 Iowa, 107, and cases cited therein; *Muldowney v. Railway Co.,* 39 Iowa, 615; *Nelling v. Railway Co.,* 98 Iowa, 554; *Forbes v. Railway Co.,* 113 Iowa, 94; *Kelsey v. Railway Co.,* 106 Iowa, 253; *Rush v. Mining Co.,* 131 Ind. 135 (30 N. E. 904); *McDonald v. Coal Co.,* 135 Pa. 1 (19 Atl. 797); *Crowe v. N. Y. Cent. Ry.,* 70 Hun (N. Y.) 37 (23 N. Y. Supp. 1100).

The appellee attempted to prove a custom of using the cage as the deceased tried to use it, but in this he failed. There is evidence of its use as a passageway, but not under the same conditions. Such evidence shows only that it was so used when the cager was there in charge, and only then after ascertaining that the cage had not been "belled up."

2. SAME: custom: evidence.

There are other reasons why the alleged custom can not be relied upon to avoid the charge of contributory negligence. In the first place, the deceased had been expressly directed not to cross the cage for the purpose of going to and from his work, and such express direction should not, in this case at least, be nullified by the alleged custom; and, in the second place, the act of attempting to cross the cage under the circumstances shown, was negligent *per se,* and for that reason a custom on the part of others is no excuse. 29 Am. & Eng. Enc. Law, 418; *Kroy v. Chicago, R. I. & P. R. R. Co.,* 32 Iowa, 357; *Ferguson v. Railway Co.,* 58 Iowa, 298. A party should not derive advantage from a wrong to which he has consented or contributed. *Greenleaf v. Railroad Co.,* 29 Iowa, 14.

3. SAME.

We think there should have been a directed verdict for the defendant on the record before us.

The judgment must therefore be *reversed.*