JOHN STEBURG, Appellee, v. VINCENT CLAY PRODUCTS
COMPANY, Appellant.

**MASTER AND SERVANT:** Factory Act—Unguarded Machinery—
1, 5 Impracticability to Guard—Burden of Proof. A showing that
machinery was unguarded makes a prima-facie case of negligence.
The master, not the servant, has the burden of proof to show that
no guard was practicable.

**MASTER AND SERVANT:** Factory Act—Impracticability of Guard
2 —Evidence. Evidence reviewed, and *held* insufficient to show
that it was impracticable to guard the belt and pulley of a dirt
conveyor.

**MASTER AND SERVANT:** Tools, Machinery and Appliances—Safe
3 Tools. Evidence reviewed, and *held* sufficient to carry to the jury

the question of the master's negligence in furnishing the servant a stick, instead of a shovel, with which to clean the dirt from a pulley.

**MASTER AND SERVANT:   Factory Act—Proximate Cause.   The**
4 failure to guard machinery, as commanded by the Factory Act, is the proximate cause of an injury *which such guarding would have prevented,* when, but for the statutory command to guard, some other defect would be held to be such proximate cause.

PRINCIPLE APPLIED:   In a brick plant, a wide belt, operated on pulleys, acted as a conveyor of dirt from a bin above the belt to the mixing machine.   Sometimes dirt fell upon the lower part of the belt and was carried into the pulley.   It was the duty of the servant to clean the dirt from the pulley while the machinery was in operation.   The ends of the belt were laced together with a wire.   While cleaning the pulley, the servant's coat sleeve caught on the end of the wire lacing and his arm was drawn between the belt and pulley.   The belt and pulleys were unguarded.   Had they been guarded, the servant would have been protected from the end of the wire.   *Held, the failure to guard,* and not the *wire hook,* was the proximate cause of the injury.

**MASTER AND SERVANT:   Factory Act—Unguarded Machinery—**
1, 5 **Impracticability to Guard—Burden of Proof.**

**MASTER AND SERVANT:   Factory Act—Proximate Cause—Prior**
6 **Interrupted Cause.**   Proximate cause is not necessarily discovered by finding a cause as to which it may be said that, had such cause not occurred, the injury would not have occurred.   Proximate cause is that which is *nearest,* in the order of responsible causation. In other words, generally speaking, the courts will stop their investigation with the ascertainment, as nearly as may be, of that cause which is the *nearest, most direct,* and *immediate* cause.

PRINCIPLE APPLIED:·   (Additional to No. 4)   The dirt was emptied upon the belt by an employee at the bin above the belt, and the cause of the dirt getting upon the lower part of the belt and from there to the pulley was largely the act of said employee in overloading the belt with dirt.   Had the belt and pulley been guarded, the negligence of the employee at the bin would have been interrupted and the accident would not have occurred.   *Held,* the failure to guard, and not the negligence of the employee at the bin, was the proximate cause.

**MASTER AND SERVANT:   Factory Act—Proximate Cause—Other**
7 **Causes Contributing.**   Where the negligence of a master is such that, without it, injury would probably not have resulted, he is liable, though other causes contributed to the injury.

**MASTER AND SERVANT:** Contributory Negligence—Performing Known Dangerous Work. It requires a very clear case of danger so imminent or so great that the court will say, as a matter of law, that the servant is chargeable with contributory negligence in doing his work *according to the instructions of the master.* *Held,* a servant in so attempting to clean a pulley while in operation was not guilty of contributory negligence *per se.*

**MASTER AND SERVANT:** Contributory Negligence—Evidence to Rebut Servant's Belief in Ability to Avoid Hurt—Assumption of Risk. Evidence of the servant's *belief* that he could do the work assigned without getting hurt is admissible, (a) on the question of contributory negligence, and (b) on the issue of assumption of risk, when (1) the servant had reported the danger to the master, and (2) the master had told him to go on with the work and that he (the master) would put up a guard as soon as he could get time. So *held* where the servant was injured in cleaning an unguarded pulley.

**EVIDENCE:** Opinion Evidence—Permanency of Injuries. The opinion of an expert on the permanency of personal injuries is not rendered improper because he qualifies his opinion by the word "may". This is not a "guess", but a concession that his opinion is not absolute.

**EVIDENCE:** Opinion Evidence—Probable Cause of Injured Person's Condition. What was the probable cause of an injured person's condition is very properly a matter of qualified expert opinion. Such opinion in no wise invades the province of the jury.

**APPEAL AND ERROR:** Review—Objections First Made on Appeal. Objections not made in trial court will not be considered on appeal.

*Appeal from Webster District Court.*—C. G. Lee, Judge.

FRIDAY, DECEMBER 17, 1915.

ACTION at law to recover damages for personal injury. Verdict and judgment for plaintiff, and defendant appeals.— *Affirmed.*

*Clark, Byers & Hutchinson,* for appellant.

*Healy, Burnquist & Thomas,* for appellee.

WEAVER, J.—The defendant corporation was a manufac-

turer of clay products, and plaintiff was one of its employees in that business. In his petition, plaintiff states that, in performing services for defendant, he was required, among other things, from time to time, to clean away the dirt which accumulated upon a certain conveyor belt and pulley used in connection with the machinery in the mill. In attending to that duty in the manner in which defendant had instructed him to perform it, and without negligence on his part, he says, his arm was caught and drawn into the pulley and he was thereby severely and permanently injured. He charges his injury to the negligence of the defendant in several particulars, but two of which were submitted to the jury. These were:

"1. That the defendant was negligent in that it did not properly guard a certain belt and pulley, as required by the Factory Acts, and about which plaintiff was required to work.

"2. That the defendant was negligent in that it did not exercise reasonable caution and prudence on its part and equip and supply the plaintiff with a proper or adequate tool or implement with which to remove the dirt from said pulley, as he was required in the course of his employment to do."

The defendant denies that it was in any manner negligent, and pleads that, if plaintiff was injured in the course of his employment, it was caused by his own want of reasonable care; and, furthermore, that plaintiff had full knowledge of the defects, if there were any, as he alleges, in the machinery and appliances, and full knowledge of the acts and omissions which he charges against the defendant, and with such knowledge, elected to continue in the employment and service, and thereby assumed all risks of the dangers so occasioned. The cause was tried to a jury, which returned a verdict for plaintiff. Defendant's motion for a new trial was overruled, and an appeal has been taken from the judgment rendered on the verdict.

Of the immediate circumstances attending plaintiff's

injury, many are without dispute. Some of these are as follows: The mill was supplied with a belt 14 inches in width and 34 feet in length, known as a conveyor. At one end of the belt and above it was a clay bin, from which clay was dropped upon the top of the belt, which carried it to an elevator at the other end, where it was received and lifted to the pug mill. Part of the distance, the belt ran through a tunnel; but at the east end, where the clay was delivered, there was a section of it uncovered and unguarded. At this end, where the clay was delivered to the elevator, the belt ran over a pulley or belt wheel, also unguarded, which was 14 inches in length and about the same measure in diameter. At times, clay would drop on the lower half of the belt and be carried around to the pulley, where it would stick and cause the machine to operate unsatisfactorily. To remedy this trouble, so far as possible, it was the custom in the mill for an employee, from time to time, to hold a shovel, or other instrument answering the same purpose, against the surface of the pulley while in motion, and thus scrape or clean off the accumulation of clay. At the time of his injury, plaintiff was employed about this part of the mill, and it was his duty to clean the pulley when occasion required. For that purpose he used a short stick about 2 inches square. While holding the stick against the pulley, a steel hook, which served to fasten together the sections of the belt, caught his arm, drawing it for its full length up to the shoulder between the belt and the pulley. The lower end of the humerus was broken off, and he was otherwise bruised and suffered much pain. The extent and character of the injury, and whether permanent or not, are subjects of controversy. Other matters of evidence, so far as seems necessary, will be referred to in discussing the several propositions of law advanced in argument.

I. At the close of the evidence, defendant moved the court to direct a verdict in its favor, on the ground that plain-

tiff had wholly failed to sustain the charge of negligence made

**1. MASTER AND SERVANT:** Factory Act: unguarded machinery; impracticability to guard: burden of proof.

in the petition. The motion was denied, and appellant assigns error thereon. Referring to the first charge of negligence, based upon the defendant's failure to guard the machinery at this point, counsel insist that there is no evidence whatever that it was reasonably practicable to guard this machinery, and therefore, as a matter of law, the jury should not have been permitted to consider that question. But it must not be overlooked that, it having been shown or admitted that the machinery was unguarded, there was no burden upon the plaintiff to show that it reasonably might have been. The fact being shown, the statute itself (Code Sup., 1913, Sec. 4999-a2) makes a prima-facie case on this question (*Kimmerle v. Dubuque Altar Co.,* 154 Iowa 42, 48, and *McCarney v. Bettendorf Axle Co.,* 156 Iowa 418), and it was for the appellant to show, if it could, that no guard was practicable. Contrary to the further con-

**2. MASTER AND SERVANT:** Factory Act: impracticability of guard: evidence.

tention of the appellant, we find the evidence insufficient to hold, as a matter of law, that such defense has been established. The presumption is that all machinery about which employees are required to work may be reasonably well guarded. The only witness speaking upon the subject is Mr. Goldner, superintendent of defendant's mill, who was called as a witness by the plaintiff. Naturally, this witness was somewhat slow to admit that a serviceable guard could have been employed, and said, in substance, that a guard or rail would make it harder to clean the pulley, and insisted that there was no danger in cleaning the pulley without a guard if a shovel was used for that purpose. On being pressed by counsel, the witness finally answered as follows:

"Q. Couldn't you put a straight sheet of iron railing with a hole in it six or eight inches in diameter, making a slide up to the top of that conveyor, with a hole or door six or eight inches or wider in your guard, and scrape off that

dirt,—would that interfere in any wise with the operation of that machine? A. The hole would have to be wider than that in order to get in. Q. You could have a hole there? A. Yes, sir. Q. Large enough to allow a shovel? A. Yes. Q. That would be absolutely practical and give protection to every employee at work there? A. Yes. If there had been a railing at the top of the belt, there would have been no chance for an employee working there of bumping into the belt and being pulled into that belt, unless he would reach in there. There would be no chance of the belt giving him an impetus which would put him into the belt, if you had a railing parallel to the top of the belt.''

That this does not make a conclusive showing upon which to relieve defendant from the statutory duty to guard its machinery is too manifest for argument. The case of *Waddell v. Burlington Basket Co.*, 159 Iowa 736, relied upon by appellant, is not at all in point. There the machinery was guarded by boards, which plaintiff himself removed in order to put his hand in the place of danger where it was injured. Moreover, the plaintiff in that case had not been ordered to do the thing that he was attempting to do, and, had he kept in the line of his duty, he would have escaped injury. The facts here make a wholly different case, and call for the application of a different principle.

On the other phase of defendant's alleged negligence, the sufficiency of the evidence to take the question to the jury is not open to doubt. Plaintiff testifies positively that, when he was first assigned to this duty, a short time before his injury, he was not familiar with the work, and the superintendent of the plant instructed him to use a straight stick with which to clean the pulley, and at the same time took a stick and illustrated to him the manner in which it should be held for that purpose. The defendant's witnesses say that a shovel is the proper and safe instrument for cleaning the pulley, and that a stick cannot be so used with safety. If the

3. MASTER AND SERVANT: tools: machinery and appliances: safe tools.

jury believed that the stick was not a proper appliance for such use and that plaintiff, being without previous experience, employed it for that purpose at the direction of the superintendent (and such finding, it will be seen, has express support in the record), the conclusion therefrom that defendant did not exercise due care with respect to the implement furnished for the performance of this duty was inevitable.

II.   If defendant was negligent, as charged, was its want of care in these respects the proximate cause of plaintiff's injury?   It is argued for defendant that, assuming the truth of plaintiff's testimony that his arm. was caught by a wire or hook in the belting and thereby drawn into contact with the pulley, then the proximate cause of his injury was such wire or hook, and not the unguarded condition of the machinery.   But the conclusion thus stated does not necessarily follow from the premise.   On the contrary, it was open to the jury, from the description of the machinery and the manner of its use, to find that a proper guard thereon would have protected the workman against this risk, or have prevented his being drawn or pulled into contact with the pulley; and in such case, the proximate cause of the injury would clearly have been the want of a proper guard, and not the catching of the hook upon plaintiff's sleeve.   This is none the less true because of the fact that, if the law had not charged the defendant with the duty of guarding the place, the proximate cause of the injury would have been the hook.   The law requires the guarding of machinery, not alone to prevent workmen or other persons from coming in contact with its moving parts, but it is also to serve, and often does serve, to prevent serious results when such contact does take place. For example, the law requires a coal mine owner to cover his cages with shields to protect miners against injury from falling coal, stone or other materials.   If this duty is neglected and a miner is injured by a stone falling down the shaft, it will not avail the operator to say, in defense to an action for

4. MASTER AND SERVANT: Factory Act: proximate cause.

damages, that the proximate cause of the injury was the falling of the stone, and not the absence of a shield. To deny this principle and approve that for which the defendant here contends would be to deprive the Factory Act and all kindred legislation of substantially all its effective force. *Poli v. Numa Block Coal Co.*, 149 Iowa 104. Although the jury were told that the law charges the manufacturer with the duty of properly guarding his machinery, yet the court further said that defendant could not be held liable unless failure in such respect was shown to be the proximate cause of plaintiff's injury, without contributory negligence on the part of the latter. The court also defined proximate cause in the terms usually employed for that purpose, and defendant has preserved no exception to such instruction. It follows, we think, that the law upon this subject was, for the purposes of the case, sufficiently stated.

It should also be said in this connection that the court charged the jury that, if it was not "shown by the evidence that, considering the location, character, and service required

5. MASTER AND SERVANT: Factory Act: unguarded machinery: impracticability to guard: burden of proof.

at the place where plaintiff was injured, there should have been a guard in the exercise of ordinary care, the jury cannot find the defendant guilty of negligence for failing to guard said machinery". It will be noted that this instruction was much more favorable to the defendant than it was entitled to under the rule of the *Kimmerle* case, above cited; for it placed upon plaintiff the burden of showing that reasonable care required a guard in that place, when the law, properly stated, places the burden upon the defendant to negative such requirement. The statute requires that, in every manufacturing plant, "all saws, planers, cogs, gearings, belting, shafting, set screws and machinery of every description therein shall be properly guarded". Code Supp. Section 4999-a2.

No express exception or reservation is made, and, so far as any exception is implied, it is to be found in the word

"properly", which qualifies the word "guarded". If it be true that any given piece of machinery, having been constructed and located with reasonable regard for the safety of persons required to work in its vicinity, is yet of such nature or character that it cannot be otherwise guarded without destroying or materially impairing its efficiency, then this court has been inclined to hold that such machinery is "properly guarded" within the meaning of the law. It would be unreasonable, however, in view of the broad and comprehensive terms of the statute, to place upon the injured employee the burden of negativing such exceptions, and such is not the rule of our decisions.

III.    There was evidence on the part of defendant that the clay was emptied upon the belt carrier by a boy stationed at the clay bin, and that the dropping or spilling of the clay upon the pulley was, to a greater or less degree, caused by the act of this boy in overloading the carrier. From this testimony, it is argued that the proximate cause of the injury was the act of the boy in loading too much clay on the belt, and therefore, under the fellow-servant rule, plaintiff cannot recover. Counsel preface their argument upon this proposition as follows:

6. MASTER AND SERVANT: Factory Act: proximate cause: prior interrupted cause.

"We are free to admit that we always approach the subject of proximate cause in a personal injury case with considerable fear and trembling. When a cause is a proximate cause and when a proximate cause is not a proximate cause are mysteries of the law which only the initiated in the inner circle are able to understand, and it has almost seemed to us sometimes that even the very elect themselves are not always to be relied upon as deciding the same way twice on the same state of facts. One method of disposing of the subject is to say that the rules as to proximate cause are so well understood and established that it is useless to waste time in discussing them, and we believe that that is the safest method for us to adopt in this case."

Yet, notwithstanding their expressed choice of the "safest method", counsel proceed at once to abandon it and demonstrate their eligibility to initiation into the inner circle of those who have solved the vexed question "when a proximate cause is not a proximate cause", and assert that the act of the boy must have been the proximate cause of the injury, for the reason that "without it, the accident would not have happened, and it was in a direct attempt to remedy the results of this negligence that plaintiff was injured". We have already, in a preceding paragraph of this opinion, expressed our views upon the question of proximate cause as it affects this case; but, in view of the despairing tone which pervades appellant's brief at this point, it is proper that we resume the subject for an additional word or two. That the phrase "proximate cause" is of somewhat elastic significance is seen in the use which counsel here make of it. Indeed, a little of the same ingenuity in tracing the causation of any human mishap would develop an almost infinite series of human acts and omissions extending back to the mistakes of the original pair in the Garden of Eden, without any one of which the thing complained of would never have happened. But the remedial arm of the law cannot reach very far in that direction, and for all practical purposes, the courts will stop their investigation with the ascertainment, as nearly as may be, of the nearest, most direct and immediate cause; though there are cases in which the original moving cause, the *causa causans*, is so clearly ascertainable as to justify holding to liability the person responsible therefor. In so doing, however, the court does not negative the equal responsibility of any other person whose subsequent negligence unites or combines with the original negligence to produce the injury. Hence, even if, in the case at bar, the neglect of the boy in the clay bin can be said to be a cause without which the injury to plaintiff would not have occurred, it does not follow that a defense has been made out; for if the proper guarding of the machinery would have interrupted that line of causation and

prevented, the injury, then the omission of such duty is the nearer and more immediate cause, and is also an intervening independent cause beyond which the injured person is not required to look. It is to be admitted that the precedents upon this, as well as upon many familiar propositions, are more or less confusing. The trouble arises, and always will arise, from the fact that the definition of the phrase is a matter of pure abstraction, while the cases calling for its application are so infinitely varied in their circumstances that the statement of the rule in a form sufficient for one given case may not be suitable in another given case, though the two statements may involve no essential difference in principle. Answering the veiled suggestion that the court itself cannot be relied upon to decide the question the same way twice on the same state of facts, we can only plead in extenuation that we may, at times, have been led into confusion by attempting to follow counsel, in whom we have great confidence, as, without diminution of zeal or abatement of convincing eloquence, they abandon one definition for another according to the necessities of the cause they represent. In the case at bar, however, we see no room for escape from the conclusion already announced, that, the failure to guard the machinery being admitted, and there being evidence from which the jury could properly find that plaintiff's injury was caused thereby, there is no occasion to inquire into any antecedent cause leading up to or uniting with the defendant's negligence to bring about the accident. And again we repeat that, the purpose of the statute being to protect the workman from injury, failure to obey it was negligence, and this negligence was the proximate cause of any accident or injury which a proper guard upon the machinery would have prevented. Where the negligence of the defendant is such that, without it, injury would not probably have resulted, he is liable, though other causes contributed to the injury. See *Aga v. Harbach*, 140 Iowa 613, and cases there cited.

7. MASTER AND SERVANT: Factory Act: proximate cause: other causes contributing.

IV. Was plaintiff guilty of contributory negligence? This the appellant affirms; because the danger to which the servant was exposed was open and obvious, and as a witness, he admits that he knew the work he performed

8. MASTER AND SERVANT: contributory negligence: performing known dangerous work.

was dangerous. But the mere fact that it was dangerous, and he knew it, does not necessarily charge him with negligence in trying to perform it. Practically all work with and about machinery in motion is attendant with danger, and in many instances with great danger, danger which no amount of care can entirely eliminate; and if we were to sustain defendant's contention that such knowledge and appreciation on the part of the servant engaged in that kind of service make him, as a matter of law, guilty of negligence, then practically all the protection which the law has been supposed to provide for the multitudes of workmen whose service exposes them to danger from the machinery and appliances about which or with which they are engaged, would be wholly swept away. So far as appears from the case made by the evidence of plaintiff, he did not expose himself to such danger except as it was incurred in the performance of his work at the place and in the manner in which he had been instructed by the master to perform it. The court cannot assume to say that the danger was of that extreme and self-evident character which no man of ordinary prudence would risk. It was doubtless a proper theory to argue to the jury, and, had the jury so found, it would not be within our province to set aside the finding; but upon the record as made, we are bound by the verdict. It requires a very clear case of danger so imminent or so great that the court will say, as a matter of law, that the servant is chargeable with contributory negligence in doing his work according to the order or instructions of his employer.

"A servant who disobeys the order of his superior takes upon himself the burden of showing a lawful reason for such

disobedience.  Respect for those in the master's authority as well as consideration for his own interests may very properly induce him to waive his own judgment for that of his superior".  *Adams v. Corvallis & E. R. Co.*, (Ore.) 152 Pac. 508.

The defense of assumed risk is not argued, and we shall take no time for its discussion.

V.  The plaintiff, as a witness, having testified that he reported to the superintendent the trouble that he was having with the clay gathering on the pulley, and that the work was dangerous, further said that the superintendent told him to go on with the work, keep the pulley clean, and they would put up a guard as soon as they could get time.  Upon the inquiry of his counsel, and over the objection of defendant, he was permitted to answer that, after this talk, he thought he could do as he was told without getting hurt.  This is assigned as error, under the rule of *Muldowney v. Illinois C. R. Co.*, 36 Iowa 462, 465.  In the case cited, the court states the question to be:

9. MASTER AND SERVANT: contributory negligence: evidence to rebut: servant's belief in ability to avoid hurt: assumption of risk.

"Does the reasonable belief of a party that he will not sustain an injury in doing acts which, but for such belief, would be negligent, as a matter of law, exonerate him from the charge of negligence in the doing of such acts?"

This question the opinion answers in the negative, and its entire correctness may be admitted.  It does not, however, govern the question here raised.  The testimony here was, in substance and effect, that plaintiff relied upon the assurance of the superintendent that a guard would soon be erected, and such evidence was proper for its bearing upon the question whether plaintiff was guilty of contributory negligence.  It was also admissible upon the defense of assumed risk, which defendant had pleaded.  The assignment of error upon the admission of the evidence cannot be sustained.

VI.  Dr. Studebaker, a medical witness for plaintiff, hav-

ing testified that he treated plaintiff for his injuries, and having described his condition, appearance and symptoms at the time of the trial, nine months later, was asked by plaintiff's counsel whether the condition then existing was temporary or chronic, and answered that it was chronic; and, to the further question whether such condition may last through life, answered, "It may." He further answered that, in his opinion, the condition would improve; but there could be no positive assurance of it. Because of the word "may", it is objected that the answer is a mere guess, and should not have been allowed. The doctor had been examined quite minutely, not merely as to his expert opinions, but to the facts as he had observed and knew them to be, and in the answer objected to, was evidently attempting to give his judgment with reference to the continuance of the plaintiff's alleged disability. Neither he nor any other expert could say with absolute knowledge how long the disability would last, and the word "may", used by him, was not a mere conjecture, but was rather in the nature of a concession that his knowledge or prediction, based upon his familiarity with the case, was not absolute. We think its admission was not erroneous. See *Manton v. Stevens & Co.*, 170 Iowa 495. We should also say that two or three other physicians testified without objection that, in their judgment, the injury was permanent.

10. EVIDENCE: opinion evidence: permanency of injuries.

Another medical witness, Dr. Richardson, after saying that he had recently examined the plaintiff, was asked a hypothetical question, which included a statement of the injury, as related by plaintiff, of his condition and symptoms following the injury, and of the history of the case from the date of the injury to the time of the trial; and upon this hypothesis he was asked:

11. EVIDENCE: opinion evidence: probable cause of injured person's condition.

"What would you say as to whether or not the injury was or was not the probable cause of the condition which you have described to the jury?"

This was objected to as "incompetent, immaterial and irrelevant and is not based on facts shown or tended to be shown by the evidence in this case". The objection was overruled, and the doctor answered:

"I would consider it to be the probable cause of the injury."

The language of the answer as printed is somewhat obscure, but we assume that the doctor meant that, in his opinion, the condition in which he described the plaintiff to be was the probable result of the injury. In

12. APPEAL AND ERROR: review: objections first made on appeal. argument, counsel for appellant say that the admission of the testimony was erroneous, because it invaded the province of the jury, and the witness was allowed to testify to an ultimate fact. It is enough to say that the objection made and argued in this court was not made to the court below. Moreover, if the objection had been properly preserved, we think it not well taken. The plaintiff had the right to state the case to the doctor upon the hypothesis that he had been injured in the manner testified to by him, together with the subsequent history of his case, as shown by the evidence, and to further call the doctor's attention to his present physical condition, and therefrom have the opinion of such expert as to whether his present abnormal condition was the result of such injury. The ultimate question which the jury had to answer was not whether plaintiff's alleged crippled condition was the result of his injury, but whether, if such injury was proved, it had been brought about by defendant's negligence without contributory negligence on plaintiff's part, and upon this question the witness did not attempt to speak.

The record discloses no reversible error, and the judgment below is, therefore—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.