OF THE

STATE OF IOWA

AT

DES MOINES, MAY AND SEPTEMBER TERMS, 1917

AND IN THE SEVENTY-FIRST YEAR OF THE STATE

---

W. A. BECK, Appellee, v. BECK COAL & MINING COMPANY, Appellant.

**NEGLIGENCE:** Proximate Cause—Prior Interrupted Cause—Jury Question. Proximate cause of an injury is that cause which is the *nearest, most direct,* and *immediate* cause, and as to which it may be said that, had such cause not occurred, the injury would not have happened. And such question is ordinarily for the jury.

PRINCIPLE APPLIED: An electric mining machine had a cutter bar several feet long, and around the outer edge thereof ran a chain fitted with cutting teeth. This bar, in cutting its way back under the vein of coal, was guided by an 8-foot, movable, 75-pound angle iron, with 4-inch flanges. After cutting its way back and under the coal, it was so adjusted that it cut laterally. In commencing work, if the teeth were in con-

tact with the coal, it was necessary to "clear" them, in order to secure sufficient speed for the machine. To so clear them, the customary way was to gently start the machine and to almost immediately stop it. In so doing, the teeth would strike the projecting coal and "kick back" the machine. In this operation, the angle iron guide was of no use, but was *immediately* put in position to guide the cutting bar after the "kick-back" was accomplished. Being now ready for cutting, the current was applied by a controller operated on a quadrant having 8 points of contact, the first being neutral and the others, in numerical order, furnishing increasing quantities of current. The jury could have found that the second, third, and fourth points of contact were, to the knowledge of defendant, out of repair; that points 2 and 3 furnished no current, and that point 4 was sunken, partly burned out, and caused the controller to stick. If the contacts worked properly, the machine could be made to move a few inches only. Plaintiff had asked for repairs, but had been told to use the machine anyway. Plaintiff, in "clearing" the teeth, might have set the angle iron guide aside, but he placed it under the wheel along the side of the machine and along the side of the cutter bar. It did not appear whether so placing it was ordinarily dangerous, and, if so, whether plaintiff knew it was dangerous when so placed. Testimony tended to show that the placing of the angle iron guide alongside the machine *before* or *after* the teeth were cleared depended on the condition at the face of the coal. He then moved the controller over contact points 1 and 2 (because they furnished no current), and to point 4. Instantly the machine started with great speed, the controller stuck, thereby preventing the immediate cutting off of the current, and instead of kicking back, it swung to the side and *hit the angle bar guide* and hurled it against plaintiff's ankle, with consequent injury. Action for damages followed.

Plaintiff claimed that the proximate cause of his injury was the defective controller.

Defendant claimed that the proximate cause of the injury was plaintiff's negligent and unnecessary act in placing the angle iron guide along the side of and near the machine.

*Held*, the record presented a jury question as to the proximate cause, and that the jury was justified in finding in accordance with plaintiff's contention.

**MASTER AND SERVANT:** Contributory Negligence—Working According to Direction of Master. It requires a very clear case of danger so imminent or so great that the court will say, as a matter of law, that the servant is chargeable with contributory negligence in operating an instrumentality which he knows is out of repair, when the master, after learning of its defective condition, directs the servant to continue its use.

PRINCIPLE APPLIED:   See No. 1.

**MASTER AND SERVANT:** Contributory Negligence—Evidence—Custom. The particular manner in which servants, *other than plaintiff*, did a certain thing, may be admissible, not to bind the master to a negligent custom, but as bearing solely on the question whether the injured servant was guilty of contributory negligence.

**MASTER AND SERVANT:** Tools, Machinery, Etc.—Defective Condition—Negligence—Evidence of Repairs Subsequent to Injury. A master who contends that an instrumentality was in good repair before, at the time of, *and after*, an accident, thereby voluntarily creating an issue as to its condition *after* the accident, may not complain (a) that the injured servant, for the sole purpose of showing the actual condition at the time of the accident, and *not* for the purpose of showing negligence, was permitted to counter with testimony that the master repaired the said instrumentality on the day following the accident; and (b) that the court specifically instructed the jury to consider such testimony for said purpose of determining the condition of such instrumentality at the time of the accident.

*Appeal from Polk District Court.*—Lawrence DeGraff, Judge.

Tuesday, May 22, 1917.

This is an action for damages for personal injuries. There was a trial to a jury, resulting in a verdict and judgment for plaintiff, and the defendant appeals.—*Affirmed.*

*Stipp, Perry, Bannister & Starzinger,* for appellant.

*C. C. Putnam,* for appellee.

**PLATE II**

Sullivan Ironclad Electric Chain Machine, Class "CE-7," Making First or Sumping Cut

2. Reversing Lever   8. Latch   10. Latch   19. Controller Lever   24. Adjustable Jack   40. Adjusting Screw   67. Sumping Bar
7. Short Cable   9. Pan   11. Feed Chain   20. Jack Pipe   29. Front Sheave   66. Cap Screws   68. Grab Hook

PRESTON, J.—1.   A number of cuts and pictures of the electric · mining machine which was being · operated by plaintiff in defendant's mine at the time he was hurt, were introduced in evidence and are contained in the abstract.   We have selected this one as giving a better idea of the machine than the others.

1. NEGLIGENCE: proximate cause: prior interrupted cause: jury question.

The machine weighs about three tons.   The sumping bar, or angle iron, appears at figure 67 in the cut, and is 8 feet long, with flanges about 4 inches high.   It weighs 75 pounds.   Its function is to guide the wagon-tongue-looking arrangement in the cut, called the cutter bar.   The controller, which it is alleged was out of repair, is shown in the cut under 19.   The machine as shown in the cut is in position for sumping.   Plaintiff was about to start sumping when he was injured.   The cutter bar on the machine is 5½ feet long and 14 inches wide, with a rounded end; around its periphery revolved a continuous cutter chain, to the links or lugs of which were fastened bits or teeth, set at different angles, somewhat like the teeth of a saw. The bits or teeth are about 5 or 6 inches apart.   Sumping is driving the cutter bar under the coal, and after that, the cutter bar and saw are run across the room under the coal.   It is not necessary to use the sumping bar until the cutter bits are freed from contact with the coal, so that the saw or teeth may get up speed to cut.   As soon as this is done, the operator is ready to use the sumping bar and start the machine; then the sumping bar is anchored by jack pipes.   At the time plaintiff was hurt, the sumping bar was not anchored with the jack pipes, but appellee contends that it was anchored to some extent by being placed under the wheel, and by its own weight.   The machine was operated by means of a hand controller, which was moved back and forth across a quadrant, on which were eight contacts, the first of which was mechanically

dead and used as a slide, but the remaining seven, when the machine was in working condition, transmitted electric current or power. Each, of the successive live contacts transmitted more power than the one preceding it; and when the controller was moved over a live contact, the machine would be set in motion and the cutter chain would revolve, the velocity of the movement of the chain depending upon the point of contact upon which the controller would rest.

It is alleged by plaintiff that the contacts 2 and 3 had become defective and would not transmit power, and that contact 4, while alive, was worn down below the level of the others, partly burned out, out of repair and in a defective condition; that defendant had knowledge of this; that, because of the said defective conditions on the day plaintiff was hurt, the controller stuck at the fourth contact so that plaintiff was not able instantly to turn off the power and stop the machine, in consequence of which the cutter bit chain, revolving at high velocity, came in contact with the sumping bar and hurled the same against plaintiff's right ankle, producing the injuries complained of. The testimony, or some of it, in regard to the defect in the fourth contact, is that there was a depression in the fourth contact; that it was lower than the other contacts, and, as one witness puts it:

"When you pushed the controller from the position in which there was no power to the fourth contact, that part of the controller which was operated by the spring pushing down slid over the two prior contacts before it reached the fourth contact, which was lower; the controller would slip into the little hole on the fourth contact."

Defendant answered in general denial, and averred that the injuries complained of were due to plaintiff's own negligence. Appellant's claim is that the proximate cause

of the accident was the negligence of plaintiff in placing the loose sumping bar near the cutter bar and then starting the machine.

The principal grounds relied upon by appellant for a reversal are the alleged contributory negligence of plaintiff, and the claim that the alleged negligence of defendant was not the proximate cause of the injury. Other errors assigned relate to rulings of the court on admission of evidence. The first two propositions were raised by appellant in different ways in the trial court, by motion, offered instructions and exceptions to instructions given.

It will be necessary to set out a little more fully the testimony bearing upon these questions, which we will now do as briefly as may be. The plaintiff testified that, as he placed the sumping bar under the wheel at the side of the machine, there would be about an inch between the sumping bar and the bed of the machine, and a space between the sumping bar and the bits on the bit chain of about 6 inches. The sumping bar was placed in the position it was in just before plaintiff started to clear the bits and kick the machine back. As stated, before starting to sump-in, it was necessary to set the machine and clear the bits; clearing the bits was done by setting the machine close enough to the coal so that the forward end of the cutter bar would be against or nearly against the coal, the face of which is often left uneven. The operator would then kick back the machine until the bits on the chain at the end of the cutter bar cleared the coal. This kicking back would be done by turning the controller on the first live contact and quickly off again, so that the bit chain would revolve just enough for the bits to strike any protruding coal surface and kick the machine back far enough for the bits to clear. The bits stick out about an inch and a half, and, being cleared one at a time, the kick-back is slight.

Appellant places great stress upon the fact that plain-

tiff did kick the machine back, and that he knew about that before he put the sumping bar at the side of the machine, and the argument is that this should defeat the plaintiff on the two questions before referred to, of contributory negligence and proximate cause. What we have just said is perhaps out of order a little at this point, but we think it not improper to say now that counsel for appellant do not distinguish the kick-back of the machine from its swinging out of position sideways. The kick-back is accomplished with a small amount of power applied and quickly taken off, while the swinging sideways with the machine, which plaintiff claimed and the jury found must have been the cause of plaintiff's injury, by hurling the sumping bar against his ankle, was caused by the power's being too great, or because it was left on too long. Indeed, no witness testifies directly that it was the sumping bar that struck plaintiff's foot. Of course, it was dark in the mine and those present had small lamps, and no one claims to have seen the sumping bar strike the plaintiff; but, as some of them put it, there was nothing else that could have done it, and in argument by both parties, it seems to be conceded that the sumping bar's being thrown against plaintiff's leg is what caused the injury. As soon as the power was turned on, the testimony shows that the accident happened very quickly. It is shown by the testimony that plaintiff tried to stop the machine, and that it was not instantly responsive. Plaintiff says he had to shove it over and get it started back before it would go back. Under the testimony, the bits did not clear the coal, and when it was started, the bits striking the coal caused the machine to swing to the side, striking the sumping bar. Clearing the bits by kicking the machine back in the manner indicated was the usual method, as testified to by witnesses on both sides. While the machine was a powerful one, under the testimony,

the operator could control it so long as he could get the power on and off quickly; but appellee's contention is that, if the power was left on too long, or was too great, and the bits were meeting resistance with the coal, while the bit chain was revolving with too great power, the machine would bounce and swing and shift positions, and thus endanger the safety of the operator, so that it seems to us that the condition of the contacts and the controller was important to the safety of the operator.

As before stated, there is testimony from which the jury could have found, although there was a conflict at this point, that the first three contacts were, for several days prior to the accident, out of repair and dead, and that the fourth contact was alive, but worn down as heretofore described, partly burned out and out of repair. There is evidence from which the jury could have found that this condition was known to the defendant, and that plaintiff had requested defendant to repair the controller and the contacts. Plaintiff had used the machine a few days before, but in the meantime had used another machine.

The defendant vigorously denies the alleged defects in the machine, but says that, assuming that they did exist, they were known to the plaintiff. On Monday before the accident which occurred on Thursday, plaintiff was using the same machine, and left it in the entry Monday evening and reported it to be repaired. He says he didn't know exactly what was the matter, but he reported general trouble with the controller. He used machine No. 1 the next morning. At noon Tuesday, he commenced again using machine No. 3, the one he was using when hurt. He says he was told by the machine boss to get it, and says he found it had been worked upon in respect to being repaired; that somebody had been working on the machine. He then took the machine and moved it to the place where he was

told to go, and this is the machine that he was afterward injured upon. He says that Tuesday noon, after he had taken machine No. 3, he found the contacts in practically the same condition he left them in before; that the first three contacts did not transmit any power to the controller; that the fourth contact was alive; and plaintiff testifies that, after he discovered that the contact was still dead, he sent the helper out to find the machine boss; he also had other trouble with the machine; the helper reported that the machine boss would be there after a while, but he did not come to repair the machine that day; that they brought some tools to fix an oil cup. Plaintiff says he used this machine, then, Tuesday afternoon, Wednesday and a part of Thursday, but that, during this time after Tuesday noon, though he noticed that the contacts were practically in the same condition, he did not have any trouble with the controller's sticking upon the fourth contact; says he sumped with it on Wednesday two or three times, and had no trouble with the controller's sticking on any of the contacts on Wednesday; that he sumped once on Thursday morning before dinner and had no trouble with the machine then; that there was nothing that stuck at that time; that he was hurt about 2:30 in the afternoon of Thursday; that, after dinner Thursday, he moved the machine to the room in which he was injured, and on the way down he met the mine foreman, and, as he then found the controller sticking on the fourth contact for the first time, he called the foreman's attention to it, and the foreman took the machine himself and ran it and admitted that it was sticking, but told plaintiff to go ahead and commence cutting with the machine. It should have been said that there is testimony that, if the operator puts the controller on and off quickly enough, there would be no movement of the chain;

and that, if it is left on longer on the first contact that is alive, or the first contact which should be alive, the operator can regulate about how far it will move these bits. One witness says that you can put the power on and it will not move more than 6 inches, and, as stated, the bits are 5 or 6 inches apart. Another witness testifies that, if the machine is in ordinary good working order, you could move the controller on the first contact and then off in such a manner without resistance as to move these bits only 1, 2, 3, 4, 5 or 6 inches, and stop. One witness says that he usually put the sumping bar on top of the machine, but admits that, if the machine jumped to a great extent, it would throw the bar off; and one witness testifies that it was dangerous to place the sumping bar alongside the machine.

It is appellee's contention that, under these circumstances, and in view of the plaintiff's previous experience with the machine, he had reason to believe that, though it was out of repair, he could do the work with it the same as he had before, and that the danger was not imminent.

We have not gone into the testimony as fully as have counsel in the argument, but we think the main facts have been stated substantially in accordance with the testimony,— at least plaintiff's testimony. As said, there was a conflict at some points, but this, of course, was for the determination of the jury.

It is contended by appellant that the nonexistence of a legal connection between the negligence and the injury is predicable whenever, for aught that appears, the accident might have happened even if the defects in question had not existed, or if the precautions which were omitted had been taken; and that the question is whether it was a cause such that, had it not existed, the injury would not have taken place (citing cases); and, as stated, the theory is that, because the sumping bar was placed as it was by

plaintiff, and there was more or less kick-back in starting the machine, the injury would have happened whether the machine was defective as alleged or not. But, under the evidence and the record which we have referred to, the jury could have found that the defect in the controller, because of which the plaintiff was not able to turn the power off quickly enough, was the cause of throwing the machine sideways, as well as back, and against the sumping bar.

Whether a defect is the proximate cause of an injury is ordinarily a question for the jury, and we conclude that, under the record in this case, it was a question for the jury whether the accident would have happened if plaintiff could have used the first live contact, and it was a question for the jury to determine whether the accident would have happened with the controller even on the fourth contact, if plaintiff could have gotten the power off quickly enough. The testimony shows, as before stated, that, by using proper care to start the machine on the second contact, the chain would be made to move but a few inches, and this could be done if the fourth contact was used, had plaintiff been able to get the power off quickly enough. There is another suggestion in regard to the placing of the sumping bar under the wheel before starting to clear the bits: when it was not used for that purpose, it should be borne in mind that it was to be used immediately after the machine was started. All these were circumstances to be considered by the jury. Many cases are cited by both parties upon the question of proximate cause, but we think there is nothing unusual in the facts or circumstances in the case requiring a review of the many cases on proximate cause.

It is contended by appellee that the sumping bar was not the cause: it was a condition of the accident, an instrumentality and agency within the danger zone of the moving cause; and that the test of defendant's liability, as

a matter of law for the court, is to be found in the probable injurious consequences which were to be reasonably antici- pated in creating the danger zone, and not in the subsequent events or agencies which might arise to bring such con- sequences about; and, to the proposition that the proximate cause is the efficient cause, they cite 4 Thompson on Neg- ligence, Secs. 4752 to 4754. They rely on some of our own cases, one of which (*Miller v. Cedar Rapids Sash & Door Co.*, 153 Iowa 735) contains elements of the case at bar, to wit, the alleged contributory negligence of plaintiff, custom, proximate cause, etc. In the *Miller* case the court said:

"It is clear from this recital that the issue was for the jury, and that it might have found, either that moving the lever with the foot, in the contingency in which plaintiff acted when injured, was the usual method, or such as de- fendant reasonably should have anticipated in guarding the machine. * * * Of course, if the foot had not slipped, the guard would not have fallen off; nor would this have happened had plaintiff moved the lever by hand, instead of attempting to do so with his foot. The slipping of the foot, like the attempt to move the lever with it, however, was the bringing of that portion of the plaintiff's body within the danger zone of defendant's negligence, and could not have intervened between its continuing negligence in operating the belt without a proper guard and the plaintiff's hurt when brought in contact therewith. In other words, the slipping of the foot and consequent pushing of the guard, even though the proximate cause, did not intervene between the negligent operation of the belt and the injury, but, at most, was concurrent therewith, and this would not obviate defendant's liability" (citing *Buehner v. Creamery Package Mfg. Co.*, 124 Iowa 445; *Walrod v. Webster County*, 110 Iowa 349, and other cases).

See, also, *Balzer v. Warring*, (Ind.) 95 N. E. 257.

It is not shown that plaintiff had knowledge that it

was dangerous to place the sumping bar in the place he did,
if it was dangerous, and it was for the jury to say whether,
in view of his past experience in so placing it, and in view
of the physical facts themselves as to the manner of placing
it, and the weight of it, he had reason to believe it was an im-
proper thing to do.  As bearing upon this, appellee cites
*Plantz v. Kreutzer & Wasem,* 175 Iowa 562; appellant cites
*Newman v. Chicago, M. & St. P. R. Co.,* 80 Iowa 672, and like
cases.  In the *Newman* case, it was held that, although the
engineer was negligent in kicking back the cars, when plain-
tiff, who was familiar with the switches, sidetracks, etc.,
and had himself set the other cars so close to the adjoin-
ing tracks as that there was not room for his body between
the moving and the standing cars, took his position in the
side of the cars to go by those he had placed too close, he
was charged with knowledge that there was not room to
pass.

2.  We think, too, under the evidence
which we have set out, and which will not
be repeated at this point, that it was for
the jury to say whether plaintiff was guilty
of contributory negligence.  Much of appel-
lant's argument at this point is that plain-
tiff knew the danger he was in, and chose an unsafe method.

2. MASTER AND
SERVANT: con-
tributory negli-
gence: work-
ing accord-
ing to direc-
tion of
master.

Appellee cites a case from Missouri, and says it is the
only case where this kind of a machine has been involved,
wherein it was said:

"The operator could tell by the hum of the motor the
character of the resistance opposed to the cutter and by
moving a lever which controlled the power could stop the
machine instantly.  *  *  *  *Bradley v. Northern Cent.
Coal Co.,* (Mo.) 151 S. W. 180.

"There is a vital difference between knowledge of the
extent and character of a danger and knowledge of a de-
fect in which lurks a danger, the extent or imminence of

which is not discoverable to the servant by the reasonable use of the opportunities his situation affords."

Ordinarily, of course, as we have said many times, the question as to whether an injured person is guilty of contributory negligence is a question for the jury, and in this case, the fact that plaintiff's work with the machine in question was to some extent dangerous, and so known to plaintiff, does not necessarily charge plaintiff with negligence in trying to perform his duties with it. The plaintiff had informed his superiors of the condition of the machine, and they had directed him to do this work in the manner in which he was doing it, so far as the controller is concerned. This court said, in *Steburg v. Vincent Clay Products Co.,* 173 Iowa 248, 260:

"It requires a very clear case of danger so imminent or so great that the court will say, as a matter of law, that the servant is chargeable with contributory negligence in doing his work according to the order or instructions of his employer."

And so, in the instant case, it is our conclusion, without further discussion of the evidence or the authorities, that it was a question for the jury. See, also, *Murray v. Swanwood Coal Co.,* 159 Iowa 1, 7.

3. It is next contended by appellant that the court erred in permitting the witness Thomas Beck to testify as to an alleged custom of placing the sumping bar near the cutter bar before clearing the cutter bits, and erred in not withdrawing said testimony from the jury, as requested by defendant. The contention is, and authorities are cited in support of the proposition (among them *Contri v. Hollingsworth Coal Co.,* 143 Iowa 115, 119, 120; *Kroy v. Chicago, R. I. & P. R. Co.,* 32 Iowa 357), that the doing of a dangerous and needless act by other persons cannot make the act right. The testimony is substantially this:

3. MASTER AND SERVANT: contributory negligence: evidence: custom.

"Q. State whether or not, at the time of this accident and prior thereto, it was the custom or usage, in getting ready to sump, to place the sumping bar under the wheel on the machine, and then see whether or not the bits would clear, and then afterwards, when the bits had cleared, to place the jack pipes in position for sumping." ·

The objection was, among others, that a negligent custom would not excuse an act of negligence. The court said:

"First, was there any custom at all in the use of this sumping bar as to its use when this preliminary test was being made? Was there any custom or use regarding the sumping bar? A. Each runner had his own way sometimes. (Same objection.) Court: The answer may stand. Court: How much observation have you made of the operation of this machine in the hands of others? A. I have worked with nearly all the men down there. You get ideas, pick up ideas from them, and you give them your own ideas, and in this way one person might sump the machine in one way and another person might sump it in another, but practically in all ways the setting of the machine is the same, pull it off the trucks over to the corner, square your machine, get ready to sump, clear your bits and start with the sumping cut."

Counsel for plaintiff then renewed the former question as to what was the usual and customary way of getting ready to sump with respect to placing the sumping bar under the wheel, and over objection, witness said:

"A. In getting the machine ready to sump, pull it off the trucks up to the face of the coal and to the corner of the room and square your machine around and sometimes it is necessary to kick your machine back with the bits before you put the sumping bar down; *other times you*

*put the sumping bar down and kick her back;* clear the machine and get ready to sump; set your jacks."

Defendant moved to strike out the part of the answer in Italic, and thereupon, counsel for plaintiff stated, in resistance to the motion, that the question is asked for the purpose of showing plaintiff's freedom from contributory negligence, and that he was in the exercise of ordinary care for his own safety. The trial court, in ruling, was of the opinion that the testimony did not show custom or usage, because each man handled the machine in his own way; and overruled the motion. It is not contended by appellant here, as we understand it, that the testimony did not in fact establish the existence of a negligent custom, but that the evidence was prejudicial, and that it should have been stricken or withdrawn under appellant's offered instruction. There is other testimony on the question as to how the work was usually done. There is testimony that whether the machine is kicked back with the bits before the sumping bar is down, or whether they put the sumping bar down and then kick her back, as before set out, depends upon the condition at the face of the coal; and there is evidence that the character of the coal, whether hard or otherwise, would have something to do with the extent of the kick-back. This is undisputed, and we do not discover any evidence that the condition of the coal did not demand or permit it to be done in the manner employed by plaintiff. The foreman, although denying the custom, said that the sumping bar is generally set aside until they get ready to sump, and there is other evidence bearing on this. But taking the record together, we think there was no prejudicial error against the defendant. The evidence tended to show the usual way, under certain circumstances, of handling the sumping bar, and was offered for the purpose of showing that plaintiff was not guilty of negligence in adopting the particular course he did in performing his duty. Plaintiff

testifies that neither the foreman nor machine boss had given him any instructions as to the operation of the machine. There is some evidence that he was instructed by another person, and plaintiff sought to show by this person that he was getting ready to sump in the way he had been taught; but because of the form of the question, an objection was sustained. It does not appear from the record that we are able to find that, from the only instruction plaintiff did receive, he was not doing it in the same manner in which he had been instructed. Appellant cites again *Miller v. Cedar Rapids Sash & Door Co.*, 153 Iowa 742, a part of which we have before quoted and will not now repeat. In *Cashman v. Du Pont de Nemours Powder Co.*, 169 Iowa 306, the question was as to whether plaintiff was doing his work in the customary way under instruction from the foreman, and it was held that it was a question for the jury whether plaintiff was using reasonable care, himself. In the instant case, the evidence was offered, not for the purpose of proving a binding custom upon defendant, but to show that plaintiff was not guilty of negligence in adopting the particular course he did in performing his duty. In the absence of express direction or rule prescribing the particular course he should pursue under the circumstances, he was required to choose between the two courses, and if, in making that choice, he adopted the course usually followed under similar circumstances, the fact would have an important bearing upon the question whether he exercised due care in making the choice. This is not the exact language, but the substance of it, used by this court in *Whitsett v. Chicago, R. I. & P. R. Co.*, 67 Iowa 150. See, also, *Pierson v. Chicago & N. W. R. Co.*, 127 Iowa 18, 23; *Branz v. Omaha & C. B. R. & B. Co.*, 120 Iowa 406; 2 Bailey on Personal Injuries, Sec. 480.

We think there was no error at this point.

4. Finally, it is contended that the
court erred in permitting witness Campbell
to testify as to subsequent repairs, and in
regard to this, complaint is made of Instruction No. 9, as well as of the ruling on the
objection to the testimony.  A number of authorities are
cited by appellant.

*4. MASTER AND SERVANT: tools, machinery, etc.: defective condition: negligence.*

Taking the whole record, we think the evidence was
properly admitted.  As before stated, the testimony of
appellant was emphatic on the important issue as to whether
in fact the contacts were defective at all, and in defendant's testimony, they go beyond the point of proving that
the contacts were in good repair at the time of the accident, and attempt to show that the contacts were in good
repair after the accident.  Counsel for both sides quote
from the testimony at some length, but we shall set out
only enough to show the situation in a general way.  Plaintiff testified that the contacts were out of repair and were
defective, and he was in a position to know.  He testifies
that he had the lid off.  Before any questions had been
asked or any evidence offered of subsequent repairs, the
defendant's machine boss testified:

"The first two live contacts were working in first class
shape, were in reasonably good condition and needed no
repair."

He says also that the second contact did transmit
power, and that the third contact transmitted power, and
says that he started the machine on the second contact that
afternoon, also on the third and fourth, and he denies that
plaintiff ever complained to him that the contacts were
defective.  The mine foreman testifies that the machine operated all right after plaintiff was hurt; that he observed
it that afternoon and the next day working, and that nothing had been done to it; that the contacts were all right—
they would transmit power; that the second, third and

fourth contacts were all transmitting power, and that the second and third contacts worked after the accident; says that he knows the second and third points of contact on the machine worked after the accident; that it cut all that day and all the next day. True, as claimed by appellant, this witness Campbell testified that a controller brush and some contacts were replaced and the slate part was taken out the day following the accident to plaintiff, and he testifies that he didn't observe the contacts which were taken off, didn't pay much attention to them.

Appellee's contention is that this evidence was admissible to prove the actual condition of the contacts at the time of the injury, and as a matter of rebuttal and contradiction of defendant's witnesses. The record shows that this testimony was offered for the one purpose of showing the actual condition of the defects at the time of the injury, and not for the purpose of showing negligence. Counsel for plaintiff so stated in open court. It is quite clear to us that there is no error at this point, and we shall not take the time to discuss the question at length, but cite the following authorities as bearing upon the point: *Scagel v. Chicago, M. & St. P. R. Co.*, 83 Iowa 380; *Parker v. City of Ottumwa*, 113 Iowa 649; *State v. Helm*, 97 Iowa 378.

The instruction complained of is quite broad, and covers more than a page and a half of the printed abstract. It starts out:

"It is for you to determine, under all the facts and circumstances as disclosed by the evidence in this case, whether the defendant company was negligent as charged by the plaintiff; that is, in failing to provide reasonably safe appliances and instrumentalities with which to work. The specific negligence alleged by the plaintiff against the defendant company is, first, that the defendant company failed to exercise ordinary care to keep certain contacts alive with electric current, and, second, that the defendant

company did not exercise ordinary care to keep the fourth contact on said machine in reasonable repair and in a safe condition."

And then the instruction goes on in the last paragraph and states:

"Whether or not at and immediately after the accident in question the electric machine was repaired."

This, it seems to us, was proper to consider, under Paragraph 2 just referred to, for the purpose of ascertaining whether defendant did keep the contacts alive. Then the instruction goes on:

"And all other facts and circumstances shown upon the trial establishing or tending to establish the actual condition of the appliances and instrumentalities in question."

The instruction, of course, must be considered in the light of the record and the testimony, and we think that it shows that the evidence was not offered for the purpose of showing negligence, but the actual condition of the appliances at the time of the injury. Appellant offered no instruction on this subject as to the alleged subsequent repairs. Appellant makes the further point that the instruction submits two specifications of negligence, neither of which was the proximate cause of the injury; but this has been referred to before. By Instruction No. 5, the court instructed in regard to the question of proximate cause and contributory negligence. As we understand it, no complaint is made of this instruction, but it is thought by appellant that the verdict is contrary thereto. We think what has been said before disposes of this question.

There may be other incidental matters, but those decided are controlling. It is our conclusion that there is no prejudicial error, and the judgment is therefore—*Affirmed*.

Gaynor, C. J., Weaver and Stevens, JJ., concur.